470 P.2d 521 (1970)
Arlene CHRISTENSEN aka Arlene Christianson
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Evelyn Gail Bethel and Cheryl DeWitt.
No. 4910.
Supreme Court of Hawaii.
June 1, 1970.
*522 Stuart M. Cowan, Honolulu (Greenstein & Cowan, Honolulu, of counsel), for defendants-appellants.
James E. Duffy, Jr., Honolulu (Cobb & Gould, Honolulu, of counsel; Albert Gould, Honolulu, on the brief), for defendant-appellee.
Before RICHARDSON, C.J., MARUMOTO, ABE, and KOBAYASHI, JJ., and Circuit Judge KABUTAN in place of LEVINSON, J., disqualified.
KOBAYASHI, Justice.
Arlene Christensen owned an automobile which State Farm insured. Christensen went to the mainland for about three *523 weeks, leaving her car in the custody of Cheryl DeWitt, a friend with whom she had worked. On September 21, 1965, DeWitt drove the car negligently, damaging the car and injuring her passenger Evelyn Gail Bethel.
Bethel sued both Christensen and DeWitt seeking damages for her injuries. First Circuit Civil No. 18152. Christensen crossclaimed against DeWitt for the damages to the automobile. DeWitt defaulted and filed bankruptcy. Judgment in No. 18152 was entered in favor of Bethel for $20,821.40 against DeWitt, but exonerating Christensen of any liability to Bethel; and in favor of Christensen against DeWitt for $691.58 damages to the car. Civil No. 18152 was not appealed.
While Civil No. 18152 was pending, Christensen filed this suit (Civil No. 22905) seeking to require State Farm to defend No. 18152, and also seeking to hold State Farm ultimately liable for any damages that might be awarded against her. State Farm removed this case to U.S. District Court. On State Farm's motion, Bethel and DeWitt were joined as defendants. Bethel answered, admitting the allegations of the complaint, and praying that State Farm "be declared obligated to defend the action heretofore brought by this defendant against plaintiff and be further found obligated to pay any such judgment as may be rendered in favor of this defendant in Civil No. 18152, in the First Circuit Court of the State of Hawaii."[1]
After the U.S. District Court had heard the entire case, it dismissed for lack of diversity jurisdiction, and remanded the case to the First Circuit Court. The U.S. District Court did reach a decision on the merits, however, just in case the Court of Appeals for the Ninth Circuit were to determine that there was diversity jurisdiction. This contingent decision was properly regarded by the First Circuit Court as having no effect. The First Circuit Court then retried the case. The parties chose to simplify the proof by making considerable use of the transcript of the U.S. District Court trial rather than recalling witnesses.
State Farm admitted issuing a policy to Christensen on the car, but contended that the car had been rented to DeWitt, and that therefore the insurance policy did not apply. The policy provides in pertinent part:
"This insurance does not apply * * * while the owned automobile is rented or leased to others by the insured, used as a public or livery conveyance, or used for carrying persons for a charge, but the transportation on a share expense basis in a private passenger automobile of friends, neighbors, fellow employees or school children shall not be deemed carrying persons for a charge; * * *."
The evidence admitted by the trial court pertinent to the rental issue may be briefly summarized:
1. The deposition of DeWitt taken April 26, 1968, in which she states that she had no agreement with Christensen to pay rent for the use of Christensen's car, rather it was a mutual convenience as Christensen had no place to leave it.
2. The deposition of Christensen (who by then had married and become Mrs. Quarles) taken April 26, 1968, to the same effect, that is, that there was no rental agreement, that it was a mutual convenience that the car be left with DeWitt.
3. A dictaphone belt recording (and transcript thereof) taken on October 5, 1965, by Rodney Kim, State Farm's claims adjuster, in which DeWitt states that there was an agreement to pay $10 per week for the use of the car, and that she had made out a check but Christensen had not yet picked it up.
4. A similar recording taken by Kim on October 13, 1965, in which Christensen *524 states that there was an agreement that DeWitt was to pay $10 per week for the use of the car.
5. A statement signed by DeWitt on September 28, 1965, taken by Allstate's claims adjuster Hilt (Allstate insured DeWitt's family), in which DeWitt states that there was an agreement to pay $10 for the use of Christensen's car.
The trial court found that the statements made in 1965 to the claims adjusters were more credible than the depositions taken two and a half years later, and therefore found that there was an agreement to rent the car; and held that the provision of the policy quoted above excluded coverage.
Bethel appeals, contending:
1. The statements of Christensen and DeWitt to the insurance adjusters were erroneously admitted in evidence, and without them there is no evidence in the record to support the finding that there was a rental agreement;
2. The rental agreement was so indefinite as not to amount to a contract;
3. The policy's rental exclusion clause is void as it is inconsistent with the Motor Vehicle Safety Responsibility Act;
4. The insurance policy exclusion, "while owned automobile is rented", implied a commercial context and therefore does not exclude coverage on the facts of this case.

I. Admissibility of the Statements of DeWitt and Christensen to the Insurance Adjusters.
These statements may be hearsay,[2] but if so, they are within the admissions exception to the hearsay rule. Bonacon v. Wax, 37 Haw. 57, 61 (1945). Here both DeWitt and Christensen were parties, and their statements were sought to be used against them, therefore they were clearly admissible.
A fundamental difference between admissions and statements against interest is that the former are not limited in purpose to impeachment, therefore no foundation need be laid. Gougher v. Hansler, 388 Pa. 160, 166, 130 A.2d 150, 153 (1957); Pekelis v. Transcontinental & Western Air, Inc., 187 F.2d 122 (2d Cir.1951). See Morgan, supra, at 181; see also IV Wigmore § 1048 p. 6 n. 5 (1940).
Counsel argues that the transcribed statements were incomplete, i.e., Kim was in DeWitt's apartment for an hour and a half and only 10 minutes were recorded. Kim testified that the recording was not edited. It is not a prerequisite to trustworthiness that 100% of a meeting be recorded, indeed Kim's recollection (of the meeting) might have been admissible even if no recording had been made at all. See Eaton v. Rice, 8 N.H. 378, 380 (1836); Commonwealth v. Bonomi, 335 Mass. 327, 347, 140 N.E.2d 140, 156 (1957); VII Wigmore § 2097.
In an appropriate case, one defendant might request an instruction limiting the effect of another defendant's admission. But here the case was tried without a jury, and no such request was made.[3]

II. Indefiniteness of the Contract to Rent.
This argument is predicated upon a disbelief of the statements of DeWitt and *525 Christensen, and a belief in their depositions. If the statements are believed, the contract was sufficiently definite. We concluded above that the statements were admissible. The trial court concluded that the statements (which were given shortly after the accident) were more credible than the depositions (which were taken two and a half years later). This seems an entirely rational conclusion, therefore we affirm the trial court's determination that the contract was sufficiently definite.

III. The Policy's Rental Exclusion Clause Is Inconsistent with and Therefore Overruled by the Motor Vehicle Safety Responsibility Act.
HRS § 287-25 provides:
"An owner's policy of liability insurance:
"(1) Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted;
"(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the motor vehicle or motor vehicles within the State and such other places as the policy provides, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: $10,000 because of bodily injury to or death of one person in any one accident, and subject to such limit for one person, $20,000 because of bodily injury to or death of two or more persons in any one accident, and $5,000 because of injury to or destruction of property of others in any one accident." (Emphasis added.)
Bethel argues that this statute requires that the policy cover her injury as DeWitt was driving the car with the permission of the insured (Christensen). Reliance is placed upon Columbia Casualty Co. v. Hoohuli, 50 Haw. 212 at 216 fn. 2, 437 P.2d 99 at 103 fn. 2 (1968), wherein this court observed:
"The purpose of expanded insurance coverage through statutory imposition of the omnibus clause is to avoid the loss to innocent parties injured at the hands of otherwise uninsured drivers, * * *."
State Farm argues that this policy is not covered by the Act because it was not certified, relying upon HRS § 287-24:
"A `motor vehicle liability policy' as used in this chapter means an owner's or an operator's policy of liability insurance, certified as provided in section 287-22 or section 287-23 as proof of financial responsibility, and issued, except as otherwise provided in section 287-23, by an insurance carrier duly authorized to transact business in the State, to or for the benefit of the person named therein as insured."
State Farm's argument is that Chapter 287 does not require insurance of every driver, rather the legislature chose only to impose insurance requirements on drivers of demonstrated irresponsibility. This contention is literally supported by the statute, but is in conflict with the rather broad language of this court in Columbia, supra. The certification issue was not argued in Columbia, either because the parties didn't think of it, or perhaps because the policy was in fact certified and therefore there was no question of the statute's applicability. Therefore the Columbia case cannot stand as a definitive interpretation of the statute, though it may remain as this court's view of desirable social and legislative policy. In Medeiros v. First Insurance Co. of Hawaii, Ltd., 50 Haw. 401, 404, 441 P.2d 341, 344 (1968), this court again concluded that the omnibus clause would be read expansively but again, there was no argument *526 that the policy was not within the Act because uncertified.
Counsel for Bethel (the injured passenger) argues forcefully that certification should make no difference, noting that State Farm has but one relevant policy form, and that if it had been requested to do so pursuant to the Act, it would have certified this very policy, thereby providing protection for Bethel.
It is difficult to devise a rationale for not protecting the first innocent victim and protecting only subsequent victims after a policy has been certified because of the first accident. Nevertheless, this is exactly what the legislature chose to do in 1949 when it passed our Motor Vehicle Safety Responsibility Act. The Committee Reports of both houses contain identical language:
"The purpose of the bill is to aid in the elimination of reckless and irresponsible driver [sic] from the highway by providing that drivers of motor vehicles and the registered owners of motor vehicles involved in accidents, where property damage exceeds $100 or where there is bodily injury or death, shall be required to give security or proof of financial responsibility. A law making insurance compulsory in all cases does not result in the elimination of the reckless or irresponsible driver but merely increases the risks and increases the costs of insurance whether administered by private companies or by the Territory." II House Journal 1876 (1949); Senate Journal 877 (1949).
These committee reports go on to describe how the bill will be more effective than the then present Automobile Liability Security Act, which was patterned after the Uniform Act, adopted by only two jurisdictions, and by 1949 had been withdrawn by its drafters. The 1949 Act was thought to be an improvement because it requires proof of financial responsibility shortly after any accident without regard to fault in the accident. As regards the present case, the 1949 Act is a distinctly backward step, inasmuch as the old law did not limit its applicability to "certified" policies, rather its provisions applied to any policy in existence. In other words, the limitation which now appears in HRS § 287-24 and which arguably denies Bethel coverage, did not appear in the earlier act!
Research of other jurisdictions with acts like ours reveals that they follow the literal language of their acts, refusing to hold an insurance company liable for injuries to innocent third persons under some exclusion in the policy, which exclusion would not have been upheld had the policy been certified before the accident. E.g., Aetna Cas. & Sur. Co. v. Simpson, 228 Ark. 157, 306 S.W.2d 117, 121 (1957). See the cases collected in Hoosier Cas. Co. of Indianapolis, Ind. v. Fox, 102 F. Supp. 214 at 232-233 (N.D.Iowa 1952). At least one jurisdiction which once followed this line of authority has subsequently passed compulsory insurance legislation, rendering such case authority obsolete. E.g., Cohen v. Metropolitan Casualty Ins. Co. of N.Y., 233 App.Div. 340, 252 N.Y.S. 841 (1931), cf. McKinney's New York Vehicle and Traffic Law §§ 310-312, passed in 1959.
Hartford Acc. & Ind. Co. v. Wolbarst, 95 N.H. 40, 57 A.2d 151 (1948), has been cited[4] as contra to the general rule, but in fact the New Hampshire statute does not predicate coverage of its act upon certification. N.H. RSA 268:1 VII.
Reluctantly, we are forced to conclude that certification is a prerequisite to the applicability of HRS § 287-25.

IV. The Commercial Context Argument.
Counsel for Bethel argues that even if there was an agreement for DeWitt to pay Christensen $10 per week, it was not rented within the meaning of the policy exclusion, as the policy implies a commercial context not present in this case. This argument is supported by the following facts: Christensen *527 and DeWitt were friends, having worked together for approximately two months; Christensen had no place to leave the car and feared leaving it on the street; the rental was nominal in amount; the rental was indefinite in duration, until Christensen returned from the mainland which in fact turned out to be about three weeks.
The insurance company argues that renting a car "significantly increase[s] the risk exposure of the insurance carrier beyond the normal operation of the insured's vehicle, which constitutes the basis for the rates charged by the insurer."
This argument is not persuasive in the context of this factual situation. Had Christensen known that her policy would become ineffective if she rented her car for $10 per week, it seems a fair supposition that she would have loaned the car to DeWitt for their mutual convenience at no charge. The exclusion of the policy would not then have applied as it would have been a simple permissive use. In the context of this case it is apparent that the money agreement was an incident rather than the essence of the arrangement. Therefore the risk to the insurance company cannot be said to have been increased "beyond normal operation" by DeWitt's use of the car while Christensen was out of town.
Counsel for Bethel cites a number of cases to support the contention that the rental exclusion implies a commerical context. Two of those cited involved automobile rentals. In Associated Indemnity Corp. of San Francisco, California v. McAlexander, 168 Tenn. 424, 79 S.W.2d 556 at 560 (1935), the insurer contended that a rental exclusion was applicable and the court held:
"The words `rental use' seem to denote the custom, practice, or business of renting the car to the public generally, and not to prohibit a private arrangement of the character here involved between an employer and one of its employees."
In Crowell v. Maryland Motor Car Ins. Co., 169 N.C. 35, 85 S.E. 37 at 38 (1915), the insurer made a similar contention with regard to a provision in an automobile fire insurance policy reading:
"The motor car hereby insured will not be rented or used for passenger service of any kind for hire, * * *."
The court held:
"It is apparent, we think, that the parties, by this clause, contemplated, not a single act of renting or using the car for hire, a mere casual or isolated instance, and that, too, without the knowledge or consent of the owner, but something of a more permanent nature."
Counsel for State Farm fails to cite a single case where a rental exclusion was upheld in a noncommercial setting.
Analogous cases involving exclusions "while carrying passengers for compensation" have been resolved in favor of insurance companies. See e.g., Jensen v. Canadian Indemnity Co., 98 F.2d 469 (9th Cir.1938); Myers v. Ocean Accident & Guarantee Corp. Ltd., 99 F.2d 485 (4th Cir.1938). But see American Lumbermen's Mut. Casualty Co. of Illinois v. Wilcox, 16 F. Supp. 799 (W.D.N.Y. 1936) where the decision for the insured is predicated upon a commercial context.
On balance, we think that the language of the policy excludes coverage only where a rental is commercial in nature. Visualizing a spectrum between simple permissive use (which clearly is covered under the policy) and commercial rental for a profit (which clearly is excluded), we view the present facts as being more in the nature of permissive use. The risk of loss to which State Farm was subjected by DeWitt's use of the car was not any greater because DeWitt agreed to pay $10 per week.
Reversed.
NOTES
[1] The quoted portion of Bethel's "answer" might more properly have been framed as a cross-claim. It has been accepted by all parties in both federal and state courts, and no issue is made of it here.
[2] "Whether an admission is hearsay and is received as an exception to the rule, while an interesting speculation, is hardly worth discussion from a practical viewpoint. Certainly it is receivable; its reception is much older than the hearsay rule; it is an unsworn, uncross-examined statement offered for the truth of the matter asserted in it; and often it hasn't even an attenuated guaranty of trustworthiness. It stands in a class by itself; the theory of its admissibility has not the remotest connection with the jury system and can be explained only as a corollary of our adversary system of litigation. Morgan, Admissions, 12 Wash.L.Rev. 181 at 182 (1937).
[3] Also, DeWitt and Christensen may very well have been in privity of interest, and if so, statements of either might be admissible against both. See IV Wigmore § 1076.
[4] New Zealand Ins. Co. v. Holloway, 123 F. Supp. 642, 647 (W.D.La. 1954).