Jeanette PETERSON, as Trustee for the Surviving Spouse and Next of Kin of Carl F. Peterson, Decedent, Respondent,

v.

Harold J. MARLOWE, d.b.a. Marlowe's Garage, Respondent-Appellant,

St. Andrew's Catholic Church, et al., Appellants-Respondents.

Marie Agnes RADEMACHER and St. Andrew's Catholic Church, third party plaintiffs, Respondents,

v.

Emil RIX, d.b.a. Downtown Standard, third party defendant, Respondent.

Nos. 46962 and 47055.

Supreme Court of Minnesota.

Sept. 23, 1977.

On Rehearing March 24, 1978.

Holmes, Eustis, Kircher & Graven, David L. Graven, and Douglas A. Kelley, Minneapolis, for St. Andrew's Catholic Church, et al.

John W. Carey, Fairfax, for Marlowe.

Gislason, Dosland, Malecki, Gislason & Halvorson, and James H. Malecki, for Employers Mutual, New Ulm.

Berens, Rodenberg, O'Connor & Stoltzfus, New Ulm, for Peterson.

Schmidt, Thompson & Thompson, and Joseph E. Thompson, Willmar, for Rademacher.

Peterson, Bell & Converse, Willard L. Converse, and Robert C. Bell, St. Paul, for Rix.

Heard before PETERSON, TODD, and YETKA, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff Jeanette Peterson instituted an action for the wrongful death of her husband, Carl Peterson, who was killed when struck by an automobile driven by defendant Marie Agnes Rademacher, a Benedictine nun associated with defendant St. Andrew's Catholic Church. Defendant Harold J. Marlowe, d.b.a. Marlowe's Garage, was the owner of the automobile that struck plaintiff's decedent. He had furnished the car to St. Andrew's for the use of Sister Rademacher and other nuns in exchange for the church's agreement to purchase insurance and pay $30 per month for maintenance and repair which Marlowe would perform. In her complaint, plaintiff alleged that Marlowe's negligent repair of the brakes contributed to the cause of the accident. The parties stipulated to severance from the main action of issues concerning insurance coverage for damages caused by Marlowe's negligent repair. This appeal focuses upon those issues.

The trial court held that the liability insurance policy purchased by the church from American Family Mutual Insurance Company (American), in which the church is the named insured, should be reformed to show Marlowe as a named insured; and that Marlowe's garage liability policy, purchased from Employer's Mutual Casualty Company (Employer's Mutual), was not applicable because it excluded coverage for vehicles rented to others. American appeals, arguing that the evidence does not justify reformation of its contract, and that the Employer's Mutual policy does insure the risk. We affirm the trial court's order to reform the American policy to include Marlowe as a named insured and reverse its holding that the automobile used by the church falls within the exclusion for rented vehicles under the Employer's Mutual policy.

1. Reformation of American policy

As owner of the vehicle and a trustee of the church, Marlowe contacted Kenneth Havemeier, an exclusive agent of American, to arrange for the insurance coverage which the church had agreed to purchase. As written, the American policy in effect at the time of the accident did not insure the risk of Marlowe's negligent repair. The policy listed Marlowe as the owner of the insured vehicle but not as a named insured, and the definition of an insured excluded Marlowe from coverage.[1]

1. The policy defined "insured" as follows: "III DEFINITION OF INSURED a. With respect to the insurance for bodily injury liability * * the unqualified word 'insured' includes the

■ The trial court found that Marlowe had requested "full coverage" of himself as owner and that Havemeier, who was aware of the terms of the agreement between Marlowe and the church, assured him that the church's policy would provide such coverage. The trial court also found that the intent of the parties to provide "full coverage" of Marlowe as owner contemplated at a minimum the coverage mandated by Minn.St.1971, § 170.40, subd. 2, of the Safety Responsibility Act:

"*Such owner's policy* of liability insurance:

\*   \*   \*   \*   \*   \*

"(2) *Shall insure* the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, *against loss from liability imposed by law for damages arising out of the* ownership, *maintenance* or use *of such motor vehicle* or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs \*   \*   \*." (Italics supplied.)

Because the policy as written failed to conform to the parties' agreement, the court ordered American to reform the policy to list Marlowe as a named insured. We hold that the trial court's findings of fact relative to the agreement between Havemeier and Marlowe are not clearly erroneous and that its use of the statute in construing that agreement was proper.

2. The rental exclusion under the Employer's Mutual policy

■ Marlowe is the named insured under a garage liability policy which was also in effect at the time of the accident. This policy, purchased from Employer's Mutual, provides bodily injury and property damage coverage for accidents arising out of "garage operations" (i.e., the "ownership, maintenance or use of the [insured's] premises for the purposes of" an automobile sales agency, repair shop, or service station), including the "ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person." The policy excludes coverage:

"(e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any

\*   \*   \*   \*   \*   \*

"(2) automobile

\*   \*   \*   \*   \*   \*

"(ii) while rented to others by the named insured unless to a salesman for use principally in the business of the named insured \*   \*   \*."

The trial court concluded that the car driven by Sister Rademacher "was definitely rented to others by the Named Insured" at the time of the accident, and therefore the Employer's Mutual policy was not applicable.

On appeal, American argues that the vehicle was not rented. Employer's Mutual points out, correctly, that this argument was not raised below. It agrees that interpretation of the contract presents an issue of law which this court may independently review, but argues that our review necessarily depends upon the underlying issues of fact and that American may not raise fac-

named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of the named insured or an adult member of his household other than a chauffeur or domestic servant. *The insurance with respect to any person or organization other than the named insured or such spouse does not apply:*

"(1) *to any person or organization,* or to any agent or employee thereof, *operating an automobile* sales agency, *repair shop,* service station, storage garage or public parking place, *with respect to any accident arising out of the operation thereof,* but this provision does not apply to a resident of the same household as the named insured, to a partnership in which such resident or the named insured is a partner, or to any partner, agent or employee of such resident or partnership." (Italics supplied.)

tual issues on appeal which Employer's Mutual had no opportunity to litigate below. Employer's Mutual contends that if the argument had been raised below, it would have introduced evidence to determine whether the arrangement between the church and Marlowe was a profitable one for Marlowe. However, Employer's Mutual does not dispute the trial court's characterization of the transaction as one motivated by charitable intentions. In the memorandum which was made a part of its findings, the trial court stated:

> "It is important first of all to recognize * * * that the entire transaction of lease of the 1966 Pontiac by Marlowe to the Church was in fact a charitable accommodation by Marlowe in favor of the Church. This fact is established not only by direct testimony but by the terms of the lease itself. Marlowe was allowing the Church to use this vehicle without any charge for overhead or depreciation and in return the Church was only obligated to pay for the cost of servicing and to carry the necessary insurance for the owner Marlowe."

From this finding of fact, we conclude as a matter of law that the vehicle was not "rented" within the meaning of the policy. The arrangement was a "charitable accommodation"; the $30 monthly charge was intended to approximate the cost of maintenance and not to return a profit to Marlowe.[2] A rental arrangement, in contrast, contemplates a commercial context and a profit motivation.[3] Whether or not the $30 monthly fee in fact exceeded the actual cost of maintenance is immaterial where profit was unintended. Employer's Mutual was not prejudiced by its lack of opportunity to introduce evidence on that issue. We hold that the exclusion for rented automobiles under the Employer's Mutual policy is not applicable.

Under our decision in this case, both insurance policies cover the damages caused by Marlowe's negligent repair. American and Employer's Mutual agree that should we hold both policies applicable, they will contribute equally to indemnify Marlowe for his liability based upon such negligence.

Affirmed in part; reversed in part.

### UPON REHEARING

■ We granted the petition of defendant St. Andrew's Catholic Church to determine, upon additional briefs, a limited issue concerning a duty of St. Andrew's Catholic Church to defendant Harold J. Marlowe not discussed in our original opinion. The issue arises out of a possibly inadvertent discrepancy between a finding and corresponding conclusion of the trial court. The trial court found as its Finding of Fact No. XVII:

> "That the oral lease agreement between Marlowe and the Church of April 15th, 1971 contemplated that *the Church would carry such liability insurance as would indemnify Marlowe* for all liability arising out of the operation, use and maintenance of such vehicle during the period of the lease." (Italics supplied.)

The evidence amply supports this finding, and it is certainly not clearly erroneous. However, the trial court's Conclusion of Law No. 1, which should correspond to that finding, is inexplicably stated in considerably broader terms. Conclusion of Law No. 1 states:

> "*That the Saint Andrew's Catholic Church* of Fairfax, Minnesota *shall indemnify Harold J. Marlowe* as to his liabilities arising out of the maintenance, operation and use of the 1966 Pontiac automobile." (Italics supplied.)

This conclusion is clearly erroneous, for while the finding is only that the church *will carry insurance to indemnify* Marlowe,

---

**2.** In fact, the church initially agreed to pay $5 per day of use of the car. When it developed that the nuns were using the car so frequently that $5 per day of use more than covered the cost of maintenance, Marlowe and the church agreed upon a monthly charge of $30.

**3.** Accord, *Wells v. Allstate Ins. Co.*, 327 F.Supp. 622 (D.S.C.1971); *Christenson v. State Farm Mut. Auto. Ins. Co.*, 52 Haw. 80, 470 P.2d 521 (1970).

the conclusion would require that the church *itself will indemnify* Marlowe. We accordingly reverse the judgment in this additional respect and remand with directions to amend the judgment to state that St. Andrew's Catholic Church was obligated only to carry insurance to indemnify Marlowe and has fully performed that obligation.