Donald KAYSEN, Administrator of the Estates of David Distel and Patricia Distel, Appellant,

v.

FEDERAL INSURANCE COMPANY, a Division of Chubb/Pacific Indemnity Group, Respondent,

and

Douglas DISTEL, et al., by Donald Kaysen, their guardian, Respondents,

v.

MUTUAL SERVICE CASUALTY INSURANCE COMPANY, defendant and third party plaintiff, Appellant,

v.

FEDERAL INSURANCE COMPANY, a division of Chubb/Pacific Indemnity Group, third party defendant, Respondent.

Nos. 47048, 47598 and 47621.

Supreme Court of Minnesota.

June 30, 1978.

Wiese & Cox and Paul G. Neimann, Minneapolis, for Donald Kaysen.

Schiefelbein & Greenberg, Minneapolis, for Mut. Service Cas. Ins. Co.

Richards, Montgomery, Cobb & Bassford and Greer E. Lockhart and Robert M. Rosenberg, Minneapolis, for Federal Ins. Co.

Wiese & Cox and Paul G. Neimann, Minneapolis, for Donald Kaysen as respondent.

SCOTT, Justice.

These two related appeals have been consolidated for decision. The first arises out of a declaratory judgment action brought by the administrator of the estate of Mr. and Mrs. David Distel to establish a contractual claim to uninsured motorist coverage under a general liability automobile insurance policy issued by Federal Insurance Company (Federal) to Mr. Distel's employer, Mars Industries, Inc. The Hennepin County District Court denied the administrator's motion for summary judgment and granted Federal's motion for summary judgment. The trial court found that the

policy did not provide uninsured motorist coverage for Mr. and Mrs. Distel, who died after being struck while pedestrians by an uninsured motorist, upon the ground that they were not insureds within the meaning of that term under the uninsured motorist coverage. The administrator appeals from the order denying his motion for summary judgment and granting Federal's motion for summary judgment. The district court certified the question as important and doubtful. We reverse.

A second action was brought by the guardian of Douglas, age 9, Brian, age 8, and Lezlie Distel, age 4, children of the decedents, to recover survivor basic economic loss benefits from Mutual Service Casualty Insurance Company (Mutual) under the assigned claims plan provisions of the Minnesota No-Fault Automobile Insurance Act, Minn.St. 65B.41 to 65B.71. Mutual then brought a third-party action against Federal and alleged that Federal should be adjudged the primary insurer. The Hennepin County District Court granted summary judgment in favor of plaintiff-guardian and judgment on the pleadings in favor of Federal. Mutual appeals from the district court orders and judgments entered pursuant thereto. We affirm.

Mr. and Mrs. Distel were struck and killed by a hit-and-run vehicle while walking along Zane Avenue North in Brooklyn Park, Minnesota, at 1:30 a. m. on July 27, 1975. For some unexplained reason, the Distels apparently abandoned a Mazda automobile in which they had been traveling shortly before the accident. The hit-and-run driver, whose identity was later discovered, did not carry insurance on his vehicle as required by the Minnesota No-Fault Automobile Insurance Act, Minn.St. 65B.48, subd. 1. Although the Distels personally owned an automobile they failed to maintain uninsured motorist coverage, which is required by Minn.St. 65B.49, subd. 4(2), on the vehicle at the time of the accident.

The Mazda automobile used by the Distels immediately prior to their deaths was owned by Mars Industries, Inc. Mr. Distel, as the corporation's vice president of sales and a member of its board of directors, was regularly assigned this company vehicle. The corporation maintained a general liability-automobile insurance policy on its vehicles with Federal. As a corporate officer, Mr. Distel was expressly insured for certain purposes under the comprehensive liability portion of the policy, but was not expressly insured under the uninsured motorist portion.

The first two issues to be considered in resolution of these matters are:

(1) Were the decedents "insureds" within the meaning of that term contained in the uninsured motorist portion of the policy of insurance owned by Mars Industries, Inc.?

(2) Was the policy of insurance sold to Mars Industries in compliance with Minn.St. 65B.49, subd. 4, which requires all policies of automobile insurance to include uninsured motorist coverage for the "protection of persons insured thereunder"?

■ 1. The two parts of the policy of insurance relevant to this initial discussion are the comprehensive liability insurance coverage and the mandatory uninsured motorist coverage required by § 65B.49, subd. 4(2). The comprehensive automobile liability insurance part defines an "insured" as follows:

"Each of the following is an insured under this insurance to the extent set forth below:

"(a) the named insured;

"(b) any partner or *executive officer* thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the named insured;

"(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *." (Italics supplied.)

It is readily apparent that this definition protects executive officers such as Mr. Distel in certain instances.

In contrast, the coverage and class of persons protected under the uninsured motorist portion are as follows:

"The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of *bodily injury* sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle * * *.

* * * * * *

"Each of the following is an insured under this insurance to the extent set forth below:

"(a) the named insured and any designated insured and, while residents of the same *household*, the *spouse* and *relatives* of either;

"(b) any other person while occupying an insured highway vehicle; and

"(c) any person with respect to damages he is entitled to recover because of *bodily injury* to which this insurance applies sustained by an insured under (a) or (b) above." (Italics supplied.)

Unlike the definition of "insured" found in the comprehensive liability part of the policy, executive officers are not expressly included in the definition of "insured" for the purpose of uninsured motorist coverage.

It is undisputed on this appeal that the decedents were not designated insureds under the uninsured motorist coverage because the space for indicating designated insureds was left blank on the policy and Mars Industries never paid any additional premiums for this coverage. Similarly, the Distels were not occupying an insured vehicle at the time of the accident. See, *Ostendorf v. Arrow Insurance Co.*, 288 Minn. 491, 182 N.W.2d 190 (1970). Therefore, the only way that the administrator could conceivably hope to prevail is to establish that the Distels were named insureds, notwithstanding the fact that the named insured clearly indicated on the face of the policy is Mars Industries, Inc., and not its corporate officers.

The administrator's argument is based on the fact that the uninsured motorist provision is a standard one for a general policy of family automobile insurance which uses such words as "bodily injury," "spouse," "relative," and "household." The administrator argues that the class of persons protected as "named insureds" must be broader than simply the corporate entity, Mars Industries, for quite obviously a corporation cannot suffer bodily injury, or have a "spouse," "relative," or "household." Carrying this argument one step further, he alleges that if coverage with respect to the named insured is limited to the corporate entity, then this portion of the uninsured motorist coverage is a nullity because the corporation cannot sustain bodily injury.

Much the same argument was made by the claimant in *Polzin v. Phoenix of Hartford Ins. Companies*, 5 Ill.App.3d 84, 283 N.E.2d 324 (1972). Polzin was the chief executive officer and principal shareholder of a corporation which carried a policy of insurance to cover two automobiles owned by the company. Included within this policy was a "Family Protection Coverage" endorsement for uninsured motorist protection which was virtually identical to the coverage presently under consideration. When Polzin was injured as a pedestrian by an uninsured motorist, he brought suit against the insurer claiming that he was covered under the company policy. After recovery had been denied by the trial court, Polzin appealed to the Appellate Court of Illinois which upheld the denial of his claim on the ground that he had failed to prove that he was within the class of persons protected by the uninsured motorist endorsement. Specifically, the court held, without explanation, that the policy terms were unambiguous, and that the uninsured motorist coverage contemplated by the endorsement extended only to the corporate entity, as the named insured, and to any other person occupying the company-owned automobiles. Pedestrians, on the other hand, were not covered, even though they might be corporate officers.

The *Polzin* case does little to clear up the ambiguity caused when a corporation is list-

ed as the named insured in an uninsured motorist provision designed to protect family members from bodily injury. Of course the corporation cannot sustain bodily injury, but this does not make the entire provision a complete nullity because in both *Polzin* and the present case the uninsured motorist coverage protects "any other person while occupying an insured highway vehicle."

Although the policy is admittedly confusing with respect to the coverage afforded the corporation as a named insured under the uninsured motorist coverage, there is no ambiguity that the class of persons protected as named insureds did not include corporate officers or their spouses. In other words, any ambiguities that do exist in the policy have no bearing on the status of the Distels. We therefore will not attempt to rewrite the policy to include the decedents within the class of persons protected when they have been excluded by the plain and ordinary language of the uninsured motorist coverage provision. See, *Ostendorf v. Arrow Insurance Co., supra*; *Gabrelcik v. National Indemnity Co.*, 269 Minn. 445, 131 N.W.2d 534 (1964).

2. There remains, however, the question of Federal's compliance with the requirements of Minn.St. 65B.49, subd. 4(1), which provides:

"On and after January 1, 1975, *no plan of reparation security may be* renewed, delivered or *issued* for delivery, or executed in this state with respect to any motor vehicle registered or principally garaged in this state *unless coverage is provided* therein or supplemental thereto, in the amounts of $25,000 because of injury to or the death of one person in any accident, and subject to the said limit for one person, $50,000 because of bodily injury to or the death of two or more persons in any one accident, *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of injury." (Italics supplied.)

The vexing problem with this broad statutory language is that the class of persons to be protected by mandatory uninsured motorist coverage is not clearly defined. Rather, the statute vaguely states that coverage is to be provided for the "persons insured thereunder." See, Widiss, A Guide to Uninsured Motorist Coverage, § 3.3. The administrator argues that the phrase "persons insured thereunder" should be construed as meaning those persons entitled to protection under the comprehensive liability part of the policy. If this construction is correct, then the uninsured motorist coverage contained in the policy of insurance held by Mars Industries is contrary to § 65B.49, subd. 4, because it does not include corporate officers, who were persons insured for certain purposes under the comprehensive liability portion of the policy.

A case that lends support to this argument is *Roach v. Central Nat. Ins. Co. of Omaha*, 60 Mich.App. 40, 230 N.W.2d 297 (1975). In *Roach*, a permissive user of a motorcycle was injured by an uninsured motorist. Under the policy of insurance held by the owner of the motorcycle, permissive users of the vehicle were included within general liability coverage, but were not included within the uninsured motorist coverage. In construing the phrase "persons insured thereunder," the Court of Appeals of Michigan held that this phrase referred to those persons insured in the general liability part of the policy. Since the motorcyclist, as a permissive user, was covered for general liability, it followed that the statute required the owner's policy of insurance to provide him with uninsured motorist coverage.

We believe the reasoning of the *Roach* decision is eminently sound. By requiring that every plan of reparation security issued in Minnesota include uninsured motorist coverage, the legislature no doubt intended that the scope of this important remedial measure be coextensive with the other coverage afforded in each plan of reparation security. If insurers are allowed to designate a separate and smaller category of persons insured under uninsured mo-

torist coverage, then the broad-based protection which the legislature intended to require could be contractually restricted at the whim of insurers. For this reason, we conclude that the most sensible reading of the phrase "persons insured thereunder" requires that uninsured motorist coverage be extended to all persons insured under any "plan of reparation security," defined in Minn.St. 65B.48, subd. 1, issued in Minnesota.

In the present case, Mr. Distel was unquestionably an insured under the comprehensive liability portion of the Mars Industries "plan of reparation security." In accordance with our interpretation of Minn.St. 65B.49, subd. 4(1), Mr. Distel should also have been covered by the uninsured motorist provisions of that policy. Since he was not covered by the terms of those provisions, the policy language contravenes the mandate of § 65B.49, subd. 4(1), and the required coverage must be inserted by operation of law. See, e. g., *State Farm Mutual Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (1971); *Amidzich v. Charter Oak Fire Ins. Co.*, 44 Wis.2d 45, 170 N.W.2d 813 (1969).

The fact that Mr. Distel was not operating the company automobile when he was struck by the hit-and-run vehicle is of no significance. We held in *Nygaard v. State Farm Mutual Auto. Ins. Co.*, 301 Minn. 10, 19, 221 N.W.2d 151, 157 (1974), and *Northland Ins. Co. v. West*, 294 Minn. 368, 373, 201 N.W.2d 133, 135 (1972), that—

" * * * uninsured motorist protection is not coverage for vehicles but for persons, even though it is contained in an insurance policy otherwise insuring an automobile."

Thus, as a person insured for the purposes of uninsured motorist coverage, Mr. Distel would have been entitled to recover in spite of the fact that he was on foot when the hit-and-run accident occurred. The administrator may therefore recover on behalf of his estate.

None of the preceding analysis is applicable to Mrs. Distel, however. She was not a person insured under any section of the Federal policy. As a consequence, the administrator of her estate is not entitled to a recovery from Federal.

The Minnesota No-Fault Automobile Insurance Act establishes two methods for recovery of basic economic loss benefits, both of which are involved in the appeal taken by Mutual Service from the judgments entered in favor of plaintiffs' guardian and Federal. An individual may seek recovery either through a plan of reparation security under the priority of payment provisions of Minn.St. 65B.47 or through the assigned claims plan contained in Minn.St. 65B.64. The latter device is available, with certain limitations, where there exists no plan of reparation security under which to make a claim. See, Steenson, *No-Fault In a Fault Context: Tort Actions and Section 65B.51 of the Minnesota No-Fault Automobile Insurance Act*, 2 Wm. Mitchell L.Rev. 109, 119.

In the second case, Mutual was assigned plaintiffs' guardian's claims for basic economic loss benefits by the Minnesota Automobile Assigned Claims Bureau, pursuant to Minn.St. 65B.63. The assignee refused to pay these benefits. In its third-party action against Federal, Mutual claims that it is not liable under the assigned claims provisions because Federal should be deemed the primary insurer under the personal injury protection coverage—the "no fault" endorsement—of the Mars Industries policy. Mutual asserts that the policy would be "meaningless" if the only insured was Mars Industries, Inc., the named insured, because a corporation cannot sustain bodily injury and has no relatives. This is the same argument made by the administrator in the first case, with respect to the uninsured motorist endorsement definition of insured, and must fail for the same reasons, leaving only one further decisive issue: Does Minn.St. 65B.64, subd. 3, bar the recovery of survivor economic loss benefits under the assigned claims plan where the members for whose death the claim is made were owners of an uninsured vehicle and knew or should have known that the vehicle was uninsured, even though the persons

claiming the benefits neither knew or should have known of the failure to insure the vehicle?

■ 3. Mutual, the assignee under the assigned claims plan, contends that plaintiffs' guardian is precluded from recovery under the plan by virtue of § 65B.64, subd. 3, which provides:

"A person shall not be entitled to basic economic loss benefits through the assigned claims plan with respect to injury which was sustained if at the time of such injury the injured person was the owner of a private passenger motor vehicle for which security is required under Laws 1974, Chapter 408 and he failed to have such security in effect. *Persons claiming benefits* as a result of *injury to members* of the owner's household shall also be disqualified from benefits if *those members knew or reasonably should have known* that security covering the vehicle was not provided as required by Laws 1974, Chapter 408." (Italics supplied.)

The issue is whether it is the knowledge of the "persons claiming benefits" or the knowledge of the injured "member" as to the failure to insure the vehicle that precludes recovery under the assigned claims plan. The record does not establish the actual knowledge or lack thereof of either the claimants (the children) or the injured members (the Distels). Plaintiffs' guardian claims the statute contemplates preclusion of recovery only where the claimants knew or reasonably should have known of the failure to insure. Mutual contends that the statute bars recovery where the injured household member knew or should have known about the failure to insure. Mutual therefore argues that the parent's knowledge should bar the children's recovery and that the children's knowledge, or lack thereof, is irrelevant. The guardian asserts that Mutual's construction is directly contrary to the intent of the assigned claims plan to allow children to collect benefits when their parents are injured and uninsured. The legislative history supports the guardian's view.

In a report to the 1973 session of the legislature, the Automobile Liability Study Commission stated:

"Primarily such a plan would be used by habitual pedestrians who do not have coverage of their own and who are struck by an uninsured or out-of-state motorist. Of course, Minnesota automobile owners who failed to provide insurance covering their own vehicles as required by law would not be entitled to make claims against the fund, *but their children or guest passengers could be eligible.*" Minnesota Automobile Liability Study Commission, Report to the 1973 Legislature, p. 19. (Italics supplied.)

By adopting the view that the children are not barred from recovery, the Study Commission's statement is entirely consistent with the Act's broad purpose of providing a comprehensive scheme to protect innocent persons from the hardships caused by the loss of the providers of their necessities. In fact, the Act provides that " * * * *every person* suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic economic loss benefits." Minn.St. 65B.46, subd. 1. (Italics supplied.)

In addition, a report concerning the Minnesota No-Fault Automobile Insurance Act, published jointly by the Minnesota State Bar Association and Continuing Legal Education, provides:

"A person cannot recover under the assigned claims plan if he was the owner of a passenger vehicle which he failed to insure as required under the Act. Members of his household who could claim benefits by reason of that relationship will also be disqualified if they knew or reasonably should have known that the reparation security was not provided by the owner as required." Minnesota State Bar Assn. and Minnesota CLE, Minnesota No-Fault Automobile Insurance Act, p. 7 (1974).

This analysis supports the proposition that only claimants who themselves knew or should have known of the failure to insure are barred from recovery.

Another commentator has also questioned whether the legislature intended the result urged by Mutual. See, Steenson, *No-Fault In a Fault Context: Tort Actions and Section 65B.51 of the Minnesota No-Fault Automobile Insurance Act*, 2 Wm. Mitchell L.Rev. 109, 122, note 80.

Furthermore, in ascertaining the intention of the legislature, we are bound to conclude that the legislature does not intend to achieve an absurd or unreasonable result. Minn.St. 645.17(1). Under Mutual's construction, a parent who failed or even refused to insure his car would be entitled to recover for injuries to a child who did not know or could not have known of the lack of coverage. Similarly, we cannot conclude that the legislature intended to deny benefits to innocent children who neither have knowledge of the parents' failure to insure nor have the means or ability to procure the required insurance.

We therefore hold that § 65B.64, subd. 3, was intended only to bar claims by persons who knew or should have known the owner's car was uninsured. Such situations arise, for example, where a spouse claims benefits for the other spouse's injury, or where a parent claims benefits for expenses paid due to his child's injuries sustained while the child was operating his own uninsured car. Under this interpretation, which follows the position taken by the Minnesota Automobile Liability Study Commission, *supra*, a person may recover if he has no reason to know of the failure to insure and he has no opportunity to correct the deficiency. On the other hand, a person who knew or should have known of the failure to insure is barred from recovery under the assigned claims plan. Because there is no evidence that the Distel children either knew or should have known of their deceased parents' insurance status, and they were obviously, because of their ages, not in a position to remedy the deficiency, the decision of the district court with respect to the second case involved in this consolidated appeal is affirmed.

In conclusion, the guardian may recover basic economic loss benefits through the assigned claims plan from Mutual on behalf of the Distel children. The administrator is entitled to the uninsured motorist benefits under the Federal policy for the death of David Distel. Minn.St. 65B.49, subd. 4(4), however, provides that "[n]o recovery shall be permitted under the uninsured motor vehicle provisions of this section for basic economic loss benefits paid or payable * * *." See, also, Note, 4 Wm. Mitchell L.Rev. 119, 145. The recovery under the Federal policy, therefore, should be reduced by the amount of basic economic loss benefits obtained through the assigned claims plan due to the death of David Distel.

The other issues raised need not be decided at this time for a resolution of these cases.

Reversed in part, affirmed in part.

OTIS, Justice (dissenting in part).

The language of Minn.St. 65B.64, subd. 3, is unequivocal and unambiguous:

"* * * Persons claiming benefits [the Distel children] as a result of injury to *members* of the owner's household [the parents who were killed] shall also be disqualified from benefits if those *members* [the parents] knew or reasonably should have known that security covering the vehicle was not provided as required by Laws 1974, Chapter 408." (Italics supplied.)

In my opinion, it is totally unreasonable to have coverage governed by the knowledge of small children who are completely removed from the decision-making process of their parents in matters of insurance. It is inconceivable that they would be consulted in such matters. Obviously the word "members" refers to the parents.

SHERAN, C. J., took no part in the consideration or decision of this case.