Claretta RADEMACHER and Sisters of
the Order of St. Benedict,
Respondents,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Appellant.

No. C6–82–556.

Supreme Court of Minnesota.

March 11, 1983.

Quinlivan & Williams, Bruce E. Sherwood and Michael J. Ford, St. Cloud, for appellant.

Nierengarten & Associates and Roger J. Nierengarten, St. Cloud, for respondents.

COYNE, Justice.

This is an appeal from amended findings of fact, conclusions of law, and order for judgment reforming a policy of automobile insurance issued by Insurance Company of North America (INA) to Sisters of the Order of St. Benedict (Sisters), awarding disability and income loss benefits to plaintiff Claretta Rademacher, and awarding medical expense benefits and replacement service loss benefits to plaintiff Sisters. The facts underlying the claim for basic economic loss benefits are undisputed; the issue of liability was tried before the district court, sitting without a jury, upon stipulated facts. We reverse.

Sister Claretta Rademacher, a member of the religious community of Sisters, was severely injured on May 2, 1977, when she was struck by an automobile operated by one Peter O'Keefe. Rademacher was a pedestrian when the accident occurred. On or about June 4, 1980, in consideration of the payment of $75,000, Rademacher executed a full and final release of all claims against O'Keefe and his employer, the City of St. Cloud, on account of bodily injuries resulting from the accident of May 2, 1977.

At the time of Rademacher's injury, Sisters of the Order of St. Benedict, a religious order which is incorporated pursuant to the Minnesota Nonprofit Corporation Act, Minn.Stat. ch. 317 (1976), and which maintains its motherhouse at St. Joseph, Minnesota, was the named insured in INA's policy of automobile insurance covering 53 motor vehicles owned by Sisters and used by members of the religious community, including Rademacher. The policy provided Sisters

with basic economic loss benefits applicable to all covered automobiles in the amount of $20,000 for medical expenses and the aggregate amount of $10,000 for income loss and replacement services loss in accordance with the requirements of the Minnesota No-Fault Automobile Insurance Act, Minn.Stat. § 65B.44 (1976).

Both Rademacher and Sisters asserted claims for basic economic loss benefits under Sisters' INA policy. Rademacher, who was employed as an administrative clerk, performing routine clerical and accounting functions in the business office at St. Benedict's Convent in St. Joseph, claimed medical benefits and income loss benefits. Although Rademacher was not paid an actual salary by Sisters (members of the order take a simple vow of poverty), Sisters provided her living and maintenance expenses. Prior to her assignment in the Sisters' business office, Rademacher had for 25 years served as a salaried teacher, assistant principal, and principal in various Roman Catholic elementary schools. At all times her salary was paid directly to Sisters. Sisters

asserted a separate claim for replacement service loss benefits. Following Rademacher's injury, Sisters reassigned another member of the order—who was then employed at St. Benedict's Hospital in Ogden, Utah, and whose wages were paid directly to Sisters—to perform the clerical services previously performed by Rademacher.

INA denied the claims on the ground that Rademacher was not an insured either under the terms of the policy issued to Sisters or within the provisions of the Minnesota No-Fault Automobile Insurance Act and that, even if Rademacher were an insured, (a) she was not entitled to income loss benefits pursuant to Minn.Stat. § 65B.44, subd. 3 (1976),[1] because she had not sustained a loss of "income" as that term is defined in Minn.Stat. §.65B.43, subd. 6 (1976),[2] and (b) Sisters was not entitled to replacement service loss benefits because the clerical services performed by Rademacher in the Sisters' business office are not the type of services contemplated by Minn.Stat. § 65B.44, subd. 5 (1976).[3]

Rademacher and Sisters then commenced this action seeking judgment on their re-

---

1. Minn.Stat. § 65B.44, subd. 3 (1976) provides as follows:

   Subd. 3. *Disability and income loss benefits.* Disability and income loss benefits shall reimburse 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury subject to a maximum of $200 per week. Compensation for loss of income from work shall be reduced by any income from substitute work actually performed by the injured person or by income the injured person would have earned in available appropriate substitute work which he was capable of performing but unreasonably failed to undertake.

   For the purposes of this section "inability to work" shall mean disability which continuously prevents the injured person from engaging in any substantial gainful occupation or employment, for wage or profit, for which he is or may by training become reasonably qualified.

2. Minn.Stat. § 65B.43, subd. 6 (1976) sets out this definition:

   Subd. 6. "Income" means salary, wages, tips, commissions, professional fees, and other earnings from work or tangible things of economic value produced through work in individually owned businesses, farms, ranches or other work.

3. Minn.Stat. § 65B.44, subd. 5, (1976) provides as follows:

   Subd. 5. *Replacement service and loss.* Replacement service loss benefits shall reimburse all expenses reasonably incurred by or on behalf of the nonfatally injured person in obtaining usual and necessary substitute services in lieu of those that, had he not been injured, the injured person would have performed not for income but for the direct benefit of himself or his household; if the nonfatally injured person normally, as a full time responsibility, provides care and maintenance of a home with or without children, the benefit to be provided under this subdivision shall be the reasonable value of such care and maintenance or the reasonable expenses incurred in obtaining usual and necessary substitute care and maintenance of the home, whichever is greater. These benefits shall be subject to a maximum of $15 per day. All replacement services loss sustained on the date of injury and the first seven days thereafter is excluded in calculating replacement services loss.

spective claims for basic economic loss benefits. The district court found that, in view of the legislative purpose for the enactment of the Minnesota No-Fault Automobile Insurance Act, it was the intention of both INA and Sisters that the policy would provide basic economic loss benefits to the entire community of nuns who belong to Sisters, including Rademacher, the same as if each nun were an individually named insured. The district court also found that INA was estopped by its acceptance of premiums from denying that Rademacher was an insured. Having reformed the policy, the court concluded that Rademacher was entitled to income loss benefits, that Sisters was entitled to reimbursement for all medical expenses incurred on behalf of Rademacher as a result of the accident of May 2, 1977, and also to replacement service loss benefits, and that all such benefits were recoverable up to the stacked limits of the 53 motor vehicles covered by the policy.

■ At the outset we hold that neither the complaint, the stipulated facts, nor the legislative purpose of the No-Fault Act support either a reformation of the policy or application of the principle of estoppel. The district court reformed the policy by attributing to the parties an intention, which the court perceived as residing in the legislative purposes of the No-Fault Act, to treat each member of the community as if she were a named insured. Although one of the stated purposes of the No-Fault Act is relief of the severe economic distress of uncompensated victims of automobile accidents, Minn.Stat. § 65B.42 (1976), provides only that that purpose shall be effected by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies which provide payment of specified basic economic loss benefits to victims of automobile accidents without regard

to fault. Nothing, however, in § 65B.42 or in any other section of the No-Fault Act requires, or even suggests, that such a policy provide basic economic loss benefits to the members or employees of the entity named as the insured as if each such member or employee were an individually named insured. While the minimum requirements of a statute may be of assistance in interpreting the intent manifested by the parties to a contract, *Peterson v. Marlowe,* 264 N.W.2d 133, 135 (Minn.1978), a general legislative intention, however humanitarian, cannot be substituted as the intention of the parties in order to reform a contract which meets the specific requirements of the statutory plan.

■ It is apparent from the memorandum attached to the original order identifying Rademacher as a named insured under the INA policy that the district court's findings, that the parties intended to insure the individual members of the religious community and that the insurer was estopped to deny that the individual members were insured, rest on the premise that because neither a convent nor a corporation could be a pedestrian or have a relative, the insurer sold insurance which had no value. The contention that because a corporation cannot sustain bodily injury the uninsured motorist coverage provided by a policy issued to a corporation was a nullity was advanced and rejected in *Kaysen v. Federal Insurance Co.,* 268 N.W.2d 920 (Minn.1978). Pointing out that the uninsured motorist coverage was not valueless because it protected any person while occupying an insured highway vehicle, we declined in *Kaysen* to rewrite the policy to include a corporate executive who was fatally injured while a pedestrian within the class of insured persons when he was excluded by the plain and ordinary language of the policy.[4] *Id.* at 924. Simi-

---

4. It should, perhaps, be noted that in *Kaysen v. Federal Insurance Co.,* 268 N.W.2d 920 (Minn. 1978), uninsured motorist coverage was extended by operation of law, pursuant to the mandate of Minn.Stat. § 65B.49, subd. 4(1), to

a corporate officer who was a designated insured under the residual liability coverage afforded by the policy. Policy requirements with respect to basic economic loss benefits, however, are governed by Minn.Stat. § 65B.49,

larly here, the personal injury protection coverage afforded by the INA policy protects any person injured "while occupying or, while a pedestrian, through being struck by" an insured motor vehicle and, hence, is *not without value.* We decline, as we did in *Kaysen,* to reform the policy to include the individual members of the religious order as named insureds.

Citing *Roepke v. Western National Mutual Insurance Co.,* 302 N.W.2d 350 (Minn. 1981), the plaintiffs suggest that a different equitable doctrine, the reverse pierce of the corporate veil, is applicable to extend coverage to the individual members of the religious order as if they were named insureds. There is, however, a substantial difference between the position of the president and sole shareholder of a business corporation whose automobiles are regarded as the shareholder's personal property and that of the members of a religious order. As the plaintiffs point out, Sisters is a non-profit corporation, whose purpose is the establishment and maintenance of a community of Roman Catholic women dedicated to the service of God and others. The corporation is organized exclusively for charitable purposes. No part of its net earnings or pecuniary gain may inure to any of its members, and on dissolution no part of its assets may be distributed to any of its members. Regardless whether a religious order conducts its operations under a corporate structure or under some less formal form of organization, the order is, nevertheless, an entity separate and distinct from its members, whose vow of poverty precludes their having any personal interest in the property owned by the religious order. Under the facts unique to this case, piercing the corporate veil would be of no avail.

■■■ The principal thrust of the plaintiffs' argument is that the community of Sisters is a "family" and that the individual members are members of that "family"

and, hence, "relatives" within the meaning of the No-Fault Act. Neither the statutory definition of "insured" set out at Minn.Stat. § 65B.43, subd. 5 (1976), nor the personal injury protection coverage of the INA policy extend coverage to all persons who live in the same household in what may be loosely termed a familial relationship. Minn.Stat. § 65B.43, subd. 5, provides as follows:

"Insured" means an insured under a plan of reparation security as provided by Laws 1974, Chapter 408 [sections 65B.41–65B.71], including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with Laws 1974, Chapter 408 as an insured:

(1) a spouse,

(2) other relative of a named insured or

(3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured.

A person resides in the same houschold with the named insured if that person usually makes his home in the same family unit, even though he temporarily lives elsewhere.

The personal injury protection coverage of the INA policy affords coverage to the named insured or a relative who is injured as the result of an accident while occupying any motor vehicle or who is injured through being struck by any motor vehicle or motorcycle. In addition, protection is extended to any other person who is injured while an occupant of the insured motor vehicle or while a pedestrian as the result of an accident involving the insured motor vehicle. The policy defines "relative":

"Relative" means the spouse and any person related to the Named Insured by blood, marriage or adoption, including a

---

subds. 1 and 2, and the priority of applicability of security for payment of economic loss bene-

fits by Minn.Stat. § 65B.47.

minor in the custody of the Named Insured, spouse or such related person who is a resident of the same household as the named insured, whether or not temporarily residing elsewhere.

As we recently held in *Mickelson v. American Family Mutual Insurance Co.,* 329 N.W.2d 814 (Minn.1983), the plain meaning of the term "relative" does not permit construction to include adult persons who, though they reside in the same household, are not related by blood, marriage or adoption. However close may be the ties binding a religious community, they are not ties of blood, marriage or adoption. Accordingly, although the INA policy would afford Sister Claretta Rademacher personal injury protection if she had been injured while occupying one of Sisters' insured vehicles or if she had been struck by one of Sisters' vehicles, she is not entitled to such protection with respect to the injury she sustained while a pedestrian through being struck by the O'Keefe automobile. The security for payment of basic economic loss benefits applicable with respect to Rademacher's injuries is, pursuant to the provisions of Minn.Stat. § 65B.47, subd. 4(c) (1976), the security covering the O'Keefe vehicle.

█ That the security covering the O'Keefe vehicle is the security for payment of basic economic loss benefits applicable with respect to Rademacher's injuries disposes of not only Rademacher's claim against INA, but Sisters' as well. Although there is no question that Sisters, the named insured, is insured under the INA policy, the policy defines "essential services expenses" as "expenses reasonably incurred during a period commencing 8 days after the date of the accident and during the eligible injured person's lifetime, in obtaining usual and necessary substitute services in lieu of those that, had he not been injured, he would have performed not for income but for the direct benefit of himself or his household * * *." The policy language comports with the priority provisions of the No-Fault Act, Minn.Stat. § 65B.47. Since Rademacher is not an insured or eligible injured person, the security for payment of Sisters' claim, like Rademacher's, is the security covering O'Keefe's automobile.

█ Moreover, if Rademacher's claim for disability and income loss benefits is valid—i.e., if her inability to perform clerical services in Sisters' business office supports a claim for reimbursement of compensation which would have been paid to her were it not for her simple vow of poverty— then it is quite clear that Sisters' stands in the position of her employer. In such event her replacement is not providing services for Rademacher's direct benefit and the benefit of the religious community as a household but for income, and Sisters' claim is no different from that of any other employer. The replacement service loss benefits provided by Minn.Stat. § 65B.44, subd. 5, are clearly limited to the cost of replacing the non-income producing household chores formerly performed by the injured person and are not intended to reimburse an employer for expense incurred in hiring a substitute employee.

Reversed.