Mary **MURPHY**, individually and as trustee for the heirs of Gary K. Murphy, **Respondent**,

v.

**MILBANK MUTUAL INSURANCE COMPANY, Respondent,**

Kemper Insurance Company, **Appellant.**

No. C3–88–2181.

Court of Appeals of Minnesota.

April 11, 1989.

Review Denied June 9, 1989.

Mark L. Pfister, Minneapolis, for appellant.

David C. Sandberg, Forest Lake, for Mary Murphy.

Clarance E. Hagglund, Dexter O. Corliss, Minneapolis, for Milbank Mut. Ins. Co.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and MULALLY,* JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

FOLEY, Judge.

Kemper Insurance Company appeals from the grant of summary judgment to respondent Mary Murphy, individually and as trustee for the heirs of Gary K. Murphy. We affirm.

## FACTS

On October 29, 1977, Gary K. Murphy, a Minnesota resident, died as a result of injuries sustained when his truck collided with a car owned and driven by an Iowa resident. At the time of the accident, Gary was employed by Polytech, a subsidiary of U.S. Industries and was operating a truck owned by USI in the course and scope of his employment.

At the time of the accident, the Iowa resident's car was insured with the bodily injury liability limits then required under Iowa law. Gary owned two personal vehicles insured by respondent Milbank Mutual Insurance Company. These vehicles had uninsured motorist coverage with Milbank with limits of $50,000/$100,000 each, which Milbank conceded could be stacked.

The truck Gary was driving was registered in Minnesota and was insured with Kemper. Kemper's policy covered a commercial fleet of over 2,000 vehicles which were operated nationwide by USI and its subsidiaries. The policy provided for uninsured motorist coverage conforming to the state where each particular vehicle was registered; the uninsured motorist coverage had a limit of $25,000/$50,000. The single limit liability coverage of the policy was $500,000, and the policy as written provided no underinsured motorist coverage.

In a previous action, Mary Murphy brought suit against Kemper and Milbank for uninsured motorist coverage. The complaint was later amended to add a claim against Kemper for underinsured motorist coverage. The trial court rejected that claim and the case went to arbitration, with the trial court's rulings on the legal issues reserved for later judicial review. Damages in the arbitration proceeding were found to be $550,000. The district court confirmed that award but ruled Kemper was to pay $15,000 of the award and Milbank $100,000, plus prejudgment interest on each award.

On review, the supreme court held that both uninsurance and underinsurance coverage may be applicable and that the insured could recover under either, but not both, coverages. *See Murphy v. Milbank Mutual Insurance Co.*, 388 N.W.2d 732 (Minn.1986). The case was remanded to the trial court to determine whether underinsurance coverage should be implied by operation of law.

On April 19, 1988, the trial court determined that Murphy was entitled to summary judgment against Kemper. The trial court determined that:

1. Kemper failed to offer underinsured motorist coverage to USI;

2. underinsured motorist coverage was not waived by USI under the facts of the case;

3. the underinsured motorist coverage imposed by operation of law would extend to Gary K. Murphy as an employee of USI and that he would be considered an "insured" under this coverage allowing his recovery of underinsured motorist benefits in the amount of $500,000;

4. Murphy was entitled to prejudgment interest on the final amount awarded;

5. Kemper was entitled to a set-off of a $25,000 payment to Murphy in partial release of workers' compensation benefits.

On July 20, 1988, the trial court issued an amended order for judgment. The amended order awarded Milbank a $50,000 subrogation interest in the sum awarded to Murphy, plus prejudgment interest. Kemper appeals.

## ISSUES

1. Did Kemper make an offer of underinsurance coverage to USI?

2. Did USI waive underinsurance coverage by rejecting the coverage in a predecessor policy?

3. Was Gary Murphy an insured under Kemper's policy with USI?

4. Was the award of prejudgment interest proper?

5. Was Kemper entitled to a set-off for payment made to Murphy in partial release of workers' compensation benefits?

## ANALYSIS

The parties agree that the material facts in this case are not in dispute. On appeal from a grant of summary judgment, this court must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). *See also* Minn.R.Civ.P. 56.03. This court need not give deference to a trial court's decision on a legal issue. *Madden v. Home Insurance Co.*, 367 N.W.2d 676 (Minn.Ct.App.1985).

■ 1. Kemper first contends that an offer of underinsured motorist coverage was made in this case. Kemper concedes it has been unable to locate any documents which specifically prove such an offer. It also concedes the deposition testimony does not prove the four criteria of an offer as set forth in *Hastings v. United Pacific Insurance Co.*, 318 N.W.2d 849, 851–53 (Minn.1982). Nevertheless, Kemper argues there was a recollection of some discussion concerning underinsured motorist coverage and due to the expiration of time and the destruction of documents, this discussion is sufficient evidence of an offer.

Kemper issued the original policy to USI in April 1976, with a renewal in April 1977. At that time, Minn.Stat. § 65B.49, subd. 6 (1976) required insurers to offer underinsured motorist coverage. The statute as amended in 1977 provided as follows:

Subd. 6. Mandatory offer; added coverage. Reparation obligors shall offer the following optional coverages in addition to compulsory coverages:

\* \* \* \* \* \*

(e) Underinsured motorist coverage offered in an amount at least equal to the insured's residual liability limits and also at lower limits which the insured may select, whereby the reparation obligor agrees to pay damages the insured is legally entitled to recover on account of a motor vehicle accident but which are uncompensated because the total damages exceed the residual bodily injury liability limit of the owner of the other vehicle. The reparation obligor is subrogated to any amounts it pays and upon payment has an assignment of the judgment if any against the other person to the extent of the money it pays;

Minn.Stat. § 65B.49, subd. 6(e) (Supp.1977) (repealed 1980).

The insurer has the burden of proving it made the mandatory offer of underinsured coverage. *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 248 (Minn.1980). The supreme court stated in *Holman:*

The means of proving that the mandatory offer was made are peculiarly within the insurer's control. The insurer keeps records of its sales transactions and has a much better understanding of the often complex language of the insurance industry.

*Id.*

Kemper seeks to rely on the deposition testimony of Richard Cantrell, an account executive for Alexander & Alexander, USI's insurance broker. According to Kemper, Cantrell testified that in April 1976 he was involved in discussions with Michael Gilbertson of USI and Dennis Buckley of A & A concerning the signing of documents for Kemper rejecting optional coverage, and that the discussions included underinsured motorist coverage. Gilbertson did not recall any discussions regarding underinsured motorist coverage. Kemper contends underinsured coverage would have been rejected automatically in light of USI's policy to refuse optional first-party coverage.

■ Allowing Kemper to bring in extenuating circumstances such as the passage of time and the destruction of documents to relieve its burden of proof is contrary to

the principles established in *Holman.* The trial court correctly determined that no offer of underinsured coverage was made. Failure to establish that a mandatory offer was made results in coverage being read into the policy by operation of law. *Holman,* 288 N.W.2d at 250.

■ 2. Kemper next argues there was a waiver of underinsured motorist coverage by USI because Kemper was directed to bid based on written specifications to duplicate previous coverage and because USI had a long-standing corporate policy of rejecting optional first-policy coverage, including underinsured motorist coverage.

■ An insurer is relieved from making the statutorily required offer of coverage when the insured waives the offer. *See Boldt v. State Farm Mutual Automobile Insurance Co.,* 345 N.W.2d 771 (Minn.1984) (waiver was found when a prospective insured interrupted an insurer's explanation of optional coverages and specifically designated only the coverages in which he was interested).

There is no evidence here of a specific waiver of underinsured coverage by USI. Deposition testimony from individuals at USI indicated they did not recall any written or verbal offers of underinsured coverage, and they were not aware of any occasions when USI refused to listen to attempts by Kemper to offer such coverage. Kemper contends, however, a waiver can be inferred from the fact USI had a long-standing policy of purchasing only the minimum coverage required by law, and USI would have rejected underinsured coverage had it been offered. Kemper argues that *Hellerstedt v. Old Republic Insurance Co.,* 429 N.W.2d 677 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. Nov. 30, 1988), applies directly to this case.

In *Hellerstedt,* the father of a child killed in an automobile accident brought suit against the insurer, which provided insurance for the family's automobile through a fleet policy provided by the mother's employer, for failure to offer underinsured motorist coverage to the mother. The employer had a fleet policy in 1976 with Commercial Union Company, with only the in-

surance required by law in each state. All optional coverage was declined. In 1978, the employer, through an insurance broker, negotiated a new policy with Old Republic. The representative of Old Republic received a copy of the Commercial Union policy and was told to duplicate the coverage. He was told the employer did not want any optional coverage and wanted only the coverage required by state law. This court held the insurer was relieved of its duty to offer underinsured coverage to the insured by the insured's insistence that the coverage duplicate the previous policy, which did not include underinsured coverage. *Id.* at 679.

*Hellerstedt,* however, is distinguishable from this case. There, a member of the brokerage firm indicated that he specifically told Old Republic that the named insured did not wish to include underinsured coverage. Here, there is no evidence USI or its broker specifically told Kemper USI did not wish to include such coverage.

■ The circumstances in which an insured is said to have rejected optional coverages will be strictly scrutinized by the court. *Kuchenmeister v. Illinois Farmers Insurance Co.,* 310 N.W.2d 86, 88 (Minn. 1981). We conclude the trial court correctly found no waiver of underinsured motorist coverage by USI.

■ 3. Kemper contends if underinsured motorist coverage is implied by law, Gary is not an insured under the definition in Minn.Stat. § 65B.43, subd. 5 and therefore has no claim for benefits. In the policy at issue, the named insureds are USI and its subsidiaries.

When underinsured coverage is imposed by law, the coverage imposed will be governed by statutory language rather than the policy language in the insurer's standard underinsured motorist clause. *Jablonski v. Mutual Service Casualty Insurance Co.,* 408 N.W.2d 854 (Minn.1987). The statute in effect in 1977 provided as follows:

Subd. 5. "Insured" means an insured under a plan of reparation security as provided by Laws 1974, Chapter 408, *in-*

*cluding* the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with Laws 1974, Chapter 408 as an insured:

(1) a spouse,

(2) other relative of a named insured or

(3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured.

Minn.Stat. § 65B.43, subd. 5 (emphasis added). Kemper argues that Gary does not qualify as an insured because he is not the named insured or the spouse, relative or minor child of a named insured.

Underinsured motorist coverage is governed by the definition of insured in Minn. Stat. § 65B.43, subd. 5. *Burgraff v. Aetna Life & Casualty Co.*, 346 N.W.2d 627, 631 (Minn.1984). We adopt the analysis of the trial court in holding Gary is an insured for purposes of this statute.

Clearly Gary Murphy would not fall under the description following "named insured" in the statutory definition. Nonetheless, the use of the word "including" to further explicate "insured under a plan of reparation security" makes it clear that the definition is not limited to the named insured and persons not named who are related to or live with the named insured. If it were so limited, only US Industries and its subsidiary corporations could recover as the named insured, for a corporation can not have a spouse or relative or reside in the same household with another person. This interpretation would render the automobile liability coverage meaningless, for a corporation cannot suffer bodily injury.

A more reasonable interpretation is that "insured" includes employees of the named insured. The employees of an insured corporation are in actuality the objects of the corporation's automobile liability coverage. Indeed, in this case Gary Murphy was an insured under the comprehensive auto liability provisions of the Kemper policy when he drove the USI vehicle in the course of this employment, as he was doing when he was killed. Thus he was "an insured under a plan of reparation security" under section 65B.49, subd. 5, and he would be entitled to recover underinsured motorist coverage within the meaning of section 65B.49, subd. 6(e).

■ 4. The trial court determined that Kemper owed prejudgment interest on the sum awarded to Mary Murphy. Kemper argues that because the maximum recovery has been determined by an arbitration award, the claim for interest should be denied.

Minn.Stat. § 549.09 (1986) allows a prevailing party to recover prejudgment interest. The interest sought here is prejudgment interest. Kemper's reliance on *Lucas v. American Family Mutual Insurance Co.*, 403 N.W.2d 646 (Minn.1987), where prearbitration award interest was not recoverable, is misplaced. The trial court was correct in awarding prejudgment interest.

■ 5. In *Murphy v. Milbank Mutual Insurance Co.*, 368 N.W.2d 753 (Minn.Ct. App.1985), *aff'd in part, rev'd in part*, 388 N.W.2d 732 (Minn.1986), this court held that the amount of uninsured motorist coverage should not be reduced by the amount of workers' compensation benefits received. The present appeal concerns the question of a set-off on the amount of underinsured coverage; thus, this issue has not been previously decided by the court.

Subsequent to our decision cited above, the Minnesota Legislature passed the collateral source statute. The trial court determined that on the basis of Minn.Stat. § 548.36 (1986), Kemper was entitled to a set-off of a $25,000 payment to Mary Murphy in partial release of any workers' compensation benefits paid to her as a result of Gary's death.

The purpose of this statute is to prevent plaintiffs from recovering damages to the extent compensation is available from collateral sources. *See Buck v. Schneider*, 413 N.W.2d 569, 572 (Minn.Ct.App.1987).

The trial court was correct here in determining Kemper was entitled to set-off.

DECISION

AFFIRMED.