**Donald R. GIESER, Respondent,**

v.

**The HOME INDEMNITY COMPANY, Appellant,**

**Chandler/Goodell Agency, Inc., Respondent.**

**No. C2–91–2439.**

Court of Appeals of Minnesota.

May 5, 1992.

Sharon L. Van Dyck, William R. Sieben, Schwebel, Goetz, Sieben & Moskal, P.A., Minneapolis, for Donald R. Gieser.

Gregory J. Johnson, Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, The Home Indemnity Company.

Frank A. Dvorak, Minneapolis, for Chandler/Goodell Agency, Inc.

Considered and decided by LANSING, P.J., and NORTON and DAVIES, JJ.

### OPINION

LANSING, Judge.

The Home Indemnity Company challenges the trial court's declaration that a police officer injured while directing traffic 30–150 feet from his squad car is entitled to underinsured motorist benefits. We reverse.

### FACTS

Officer Gieser sued Home Indemnity, seeking a declaration that he was eligible for underinsured motorist coverage under its policy insuring all motor vehicles owned by the City of Inver Grove Heights.[1] The

---

1. Gieser also sued Chandler/Goodell Agency, Inc., who issued the policy, for negligence in

trial court granted Gieser's motion for summary judgment finding (1) Gieser was occupying the squad car at the time of the accident; (2) Minnesota law requires the policy definition of "insured" to be as extensive for underinsured purposes as for liability purposes which includes anyone "using the vehicle" with the owner's permission; and (3) Gieser was using the vehicle at the time of the accident.

The stipulated facts established that Gieser was struck by a passing car while directing traffic at the scene of an accident. Gieser had arrived at the scene about two minutes earlier, positioned his squad car so that it would assist in rerouting traffic around the accident site, and left the car running, with flashing and emergency lights. Gieser was 30–150 feet from the squad car when he was struck.

Gieser recovered the policy limits from the insurer of the vehicle that struck him. Home Indemnity's underinsured coverage applies to "anyone occupying a covered auto." "Occupied" is defined as "in, upon, getting in, on, out or off."

### ISSUES

1. Should the policy be reformed so that the definitions of "insured" in the underinsured and liability sections of the policy are coextensive?

2. Was Gieser "occupying" the squad car at the time of the accident?

### ANALYSIS

#### I

■ Basing its decision on the language of the Minnesota No–Fault Act, the Minnesota Supreme Court has held that the definition of "insured" in the liability and uninsured motorist coverage sections of a policy must be coextensive. *Kaysen v. Federal Ins. Co.*, 268 N.W.2d 920, 924 (Minn. 1978). Applying *Kaysen* in *Burgraff v. Aetna Life & Casualty Co.*, 346 N.W.2d 627 (Minn.1984), the supreme court held that when the no-fault statute provided a definition of insured for liability coverage,

procuring coverage. That claim is not involved

that definition had to apply to uninsured coverage as well. *Id.* at 630.

Going one step further, the court held that for definitional consistency, that same statutory definition would apply to underinsured coverage, even though at the time underinsured coverage was not required or governed by statute. *Id.* at 630–31. In short, the court replaced a restrictive, conflicting definition of "insured" in an underinsured policy with a broader statutory definition.

In the Inver Grove Heights underinsured policy, however, the definition of "insured" does not conflict with the statute. *See* Minn.Stat. § 65B.43, subd. 5 (1982). Rather, it is broader than the statutory definition because it includes not just "the insured" under clause one, but also those "occupying" the vehicle under clause two. Gieser asks this court to extend *Burgraff* by replacing the underinsured definition of "insured" with the liability definition from the same policy, *not* from the statute.

In *Kaysen* the court did replace the uninsured definition of "insured" with the liability definition of insured from the same policy, but it did so on the basis of Minn. Stat. § 65B.49, subd. 4(1) (1976), which it read as requiring that substitution. *Kaysen*, 268 N.W.2d at 925. Here, the statute does not require the definition of "insured" to be coextensive in the liability and underinsured sections of the policy.

The Inver Grove Heights policy already provided coverage for persons not required to be insured by statute (occupants). There is no statutory or public policy basis to expand coverage not required and not contracted for. Because we decline to hold that the definition of "insured" should be coextensive in the liability and underinsured sections of a policy, we need not address whether Gieser was "using" the squad car at the time of the accident.

#### II

■ In 1970, the Minnesota Supreme Court strictly interpreted the term "occupying" in an insurance policy. *Ostendorf*

in this appeal.

*v. Arrow Ins. Co.*, 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970). In *Ostendorf*, the insurance policy defined "occupying" as "in or upon, entering or alighting from." *Id.* at 493, 182 N.W.2d at 191. Relying on the plain language of the policy, the court held that the claimant was not entering the insured vehicle when she was approaching it but still ten feet away. *Id.* at 494, 182 N.W.2d at 192. The court also reasoned that given the unambiguous language it was not free to rewrite the policy. *Id.* at 495, 182 N.W.2d at 192.

The subsequent case law in Minnesota defining "occupying" focuses on whether the injured party was within a reasonable geographic perimeter of or maintained a continuous and uninterrupted relationship with the vehicle. *See Balderrama v. Milbank Mut. Ins. Co.*, 324 N.W.2d 355 (Minn. 1982); *Klein v. United States Fidelity & Guar. Co.*, 451 N.W.2d 901 (Minn.App. 1990), *pet. for rev. denied* (Minn. Mar. 27, 1990). Under this analysis, the court examines the nature of the injured person's activity, including time elapsed since exiting and distance from the vehicle. *Conlin v. City of Eagan*, 482 N.W.2d 519 (Minn.App. 1992). At some point, time and distance factors become too attenuated to sustain coverage. *Horace Mann Ins. Co. v. Neuville*, 465 N.W.2d 432, 434 (Minn.App.1991), *pet. for rev. denied* (Minn. Mar. 27, 1991) (quoting *Day v. Coca–Cola Bottling Co.*, 420 So.2d 518, 520 (La.Ct.App.1982)).

Applying this test, Minnesota courts have found that claimants injured while standing on the highway putting gas into a car, *Balderrama*, 324 N.W.2d at 358, changing a flat tire on a truck, *Klein*, 451 N.W.2d at 904, waiting near a stalled car for someone to return with help, *Neuville*, 465 N.W.2d at 435, and preparing a car for towing by an insured tow truck, *Conlin*, 482 N.W.2d at 521, were occupants of their vehicles. In each of these cases the injured person was within ten feet of the vehicle performing a vehicle maintenance activity necessary to resume travel.

Even under the more expansive definition of "occupying" applied in these cases, Gieser was not occupying the squad car at the time he was injured. When struck by the passing car, Gieser was engaged in an activity completely unrelated to the squad car. He was not engaged in maintaining or towing a vehicle, an element present in each of the earlier cases. Although he was using his squad car as a tool for directing traffic, and left the motor running and lights flashing, his connection with the vehicle was too tenuous to satisfy the continuing and uninterrupted relationship test. Further, although Gieser had been at the scene only a few minutes, he was at least 30 feet and possibly 150 feet from the squad car when he was injured—beyond the "reasonable geographic perimeter" of the vehicle. *Klein*, 451 N.W.2d at 903.

### DECISION

The trial court erred in concluding that the definition of "insured" must be coextensive within the policy and that Gieser was "occupying" the vehicle at the time of the accident.

Reversed.