Judd TURNER, et al., Respondents,

v.

**MUTUAL SERVICE CASUALTY INSURANCE COMPANY,**
Respondent,

**Liberty Mutual Fire Insurance Company, Appellant.**

No. C9–02–2029.

Court of Appeals of Minnesota.

June 17, 2003.

Donald R. McNeil, Coleman, Hull & Van Vliet, P.L.L.P., Minneapolis, for respondents Judd and Terese Turner.

Jack D. Moore, Moore, Warner & Kruger, St. Paul, for respondent Mutual Service Casualty Insurance Company.

Theodore J. Smetak, Douglas D. McGhee, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis; and Nancy L. Gores, Conley & Borgeson, St. Paul, for appellant.

Considered and decided by HALBROOKS, Presiding Judge, HARTEN, Judge, and STONEBURNER, Judge.

## OPINION

HALBROOKS, Judge.

Respondents Judd and Terese Turner, injured while using a rental car on an out-of-state business trip, moved for summary judgment in this declaratory-judgment action they brought to recover uninsured/underinsured motorist benefits from appellant Liberty Mutual Fire Insurance Company, Judd Turner's employer's commercial automobile insurer, and respondent Mutual Service Casualty

Company, the Turners' personal automobile insurer. The district court granted summary judgment to the Turners, holding that the commercial automobile policy provides primary uninsured/underinsured coverage and the personal automobile policy provides excess coverage. Because we conclude that the commercial automobile policy does not provide uninsured/underinsured motorist coverage to the Turners, who were not "insureds" under the policy or occupying a covered motor vehicle as defined by the policy, we reverse.

## FACTS

Respondents Judd and Terese Turner, husband and wife, are Minnesota residents. On November 7, 1999, the Turners were seriously injured in a two-car accident in Louisiana. At the time of the accident, Judd Turner was attending a business meeting related to his employment as sales director for Express Scripts, Inc. Judd Turner was accompanied on the trip by his wife, Terese Turner. The Turners had rented a car for their use in Louisiana. It is undisputed that Express Scripts made the arrangements and paid for the rental car.

Appellant Liberty Mutual Fire Insurance Company (Liberty Mutual) provided commercial auto insurance to Express Scripts; its policy contained an endorsement that provided $1,000,000 of uninsured motorist/underinsured motorist (UM/UIM) coverage. Respondent Mutual Service Casualty Insurance Company (MSI) provided personal auto insurance to the Turners with UM/UIM limits of $250,000 per person and $500,000 per accident.

After the Turners settled their claims with the at-fault driver's insurer, they brought an action for UM/UIM benefits against both Liberty Mutual and MSI. MSI asserted a cross-claim against Liberty Mutual for reimbursement of basic-economic-loss benefits that it had paid on behalf of the Turners. The parties filed cross-motions for summary judgment.

The district court determined that the Turners are entitled to primary UM/UIM coverage under Liberty Mutual's policy with excess coverage to be provided by MSI. In addition, the court granted MSI's motion for reimbursement from Liberty Mutual of basic-economic-loss benefits paid on behalf of the Turners. Liberty Mutual has not appealed from the judgment ordering it to reimburse MSI for basic-economic-loss benefits.

## ISSUES

1. Did the district court err in concluding that the Turners were "insureds" under the Liberty Mutual policy and were "occupying" a covered vehicle making Liberty Mutual's policy primary for the Turners' UM/UIM claims?

2. Did the district court err in holding that Minn.Stat. § 60A.08, subd. 12 (2002), requires a commercial automobile policy to provide UM/UIM coverage to occupants of a rental vehicle?

## ANALYSIS

On appeal from summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Because the parties agree that there are no genuine issues of material fact, our focus is on the district court's application of the law. Interpretation of insurance policies is a question of law, which we review de novo. *Metro. Prop. & Cas. Ins. Co. v. Miller,* 589 N.W.2d 297, 299 (Minn.1999). Statutory construction is also subject to de novo review. *Am. Family Ins. Group v.*

*Schroedl,* 616 N.W.2d 273, 277 (Minn. 2000). The district court held that Liberty Mutual's coverage is primary because the Turners were insureds under the Liberty Mutual policy and because the Louisiana rental car was a "covered auto" pursuant to Minn.Stat. § 60A.08, subd. 12 (2002).

## I.

■ The Liberty Mutual policy at issue contains a Minnesota Uninsured and Underinsured Motorists Coverage endorsement that provides that it will pay

all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident".

The endorsement defined "insured" as

1. You.

2. If you are an individual, any "family member".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

"You" was defined as "the Named Insured." The named-insured endorsement listed Express Scripts and ten other business entities.

In extending coverage to Judd Turner as an insured based on his status as an employee of Express Scripts, the district court relied on *Murphy v. Milbank Mut. Ins. Co.,* 438 N.W.2d 390 (Minn.App.1989), *review denied* (Minn. June 9, 1989). *Murphy* involved a claim for underinsured mo-

torist benefits brought by the wife of a man who was killed while operating his employer's truck. *Id.* at 392. The decedent's wife sued the insurers of their family-owned vehicles and the commercial fleet owned by the employer. The case originated under the 1977 UM/UIM statutory scheme when insurers were required to make mandatory offers of optional coverages. Because the commercial policy involved in *Murphy* did not contain UIM coverage and because the court found no waiver of the coverage, the Murphy court imposed UIM coverage as a matter of law and utilized statutory language rather than standard UIM policy language to define an "insured." As a result, the court concluded that a reasonable interpretation of the term "insured" included an employee of the named insured, reasoning that

[c]learly [the employee] would not fall under the description following "named insured" in the statutory definition. Nonetheless, the use of the word "including" to further explicate "insured under a plan of reparation security" makes it clear that the definition is not limited to the named insured * * *. If it were so limited, only [the corporate employer] * * * could recover as the named insured, * * *. This interpretation would render the * * * coverage meaningless, for a corporation cannot suffer a bodily injury.

*Id.* at 395.

In the intervening years since *Murphy* was decided, the UM/UIM statutory scheme has changed significantly. While the district court concluded that Liberty Mutual's definition of "insured" in this case was "substantially the same" as the definition applied in *Murphy,* we disagree. Here, we look to the policy language. Under Liberty Mutual's definition, the Turners are not the named insureds. It is undisputed that the named insureds are

Express Scripts and the other business entities.

Further, Liberty Mutual's definition of insured does not render its UM/UIM coverage meaningless because the definition includes anyone occupying a covered auto. Moreover, the Minnesota Supreme Court has rejected the argument that a commercial insurance policy providing coverage to a corporate named insured is a nullity.

> The contention that because a corporation cannot sustain bodily injury the uninsured motorist coverage provided by a policy issued to a corporation was a nullity was advanced and rejected in *Kaysen v. Federal Insurance Co.*, 268 N.W.2d 920 (Minn.1978). Pointing out that the uninsured motorist coverage was not valueless because it protected any person while occupying an insured highway vehicle, we declined in *Kaysen* to rewrite the policy to include a corporate executive who was fatally injured while a pedestrian within the class of insured persons when he was excluded by the plain and ordinary language of the policy.

*Rademacher v. Ins. Co. of N. Am.*, 330 N.W.2d 858, 861 (Minn.1983) (footnote omitted) (citation omitted); *see also Lundgren v. Vigilant Ins. Co.*, 391 N.W.2d 542, 544 (Minn.App.1986) ("Underinsured motorists coverage is not a nullity when issued to a corporation [as named insured] or other business entity.").

■ MSI, citing *Kaysen v. Fed. Ins. Co.*, 268 N.W.2d 920 (Minn.1978), contends that Liberty Mutual's policy must extend UM/UIM coverage to Judd Turner under the "rule of coextensiveness." For purposes of liability coverage, Liberty Mutual's policy defines "insured" to include "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." MSI argues that the same broad definition of "insured" must apply for purposes of UM/UIM coverage.

In *Kaysen*, a deceased employee fit within the definition of an "insured" under the employer's automobile policy for purposes of liability coverage but not for UM coverage. *Id.* at 922–23. At the time, Minn.Stat. § 65B.49, subd. 4(1) (1976) (repealed 1985), required that all insurance policies provide UM coverage for the "persons insured thereunder." Applying that statutory language, the court in *Kaysen* imposed UM coverage because the employee was insured under the policy for liability purposes. *Id.* at 924–25. As this court later recognized, however,

> In *Kaysen* the court did replace the uninsured definition of "insured" with the liability definition of insured from the same policy, but it did so on the basis of Minn.Stat. § 65B.49, subd. 4(1) (1976), which it read as requiring that substitution. Here, the statute does not require the definition of "insured" to be coextensive in the liability and underinsured sections of the policy.

*Gieser v. Home Indem. Co.*, 484 N.W.2d 256, 257 (Minn.App.1992) (internal citation omitted). The statute requiring the imposition of coverage in *Kaysen* is no longer in effect. Further, the court in *Gieser* held that

> Minnesota law does not require an insurance policy's definition of "insured" to be coextensive for liability and underinsured coverage when there is no conflict with the no-fault statute.

*Id.* at 256. As previously noted, unlike the statutory definition of "insured," Liberty Mutual's UM/UIM endorsement defines "insured" to include anyone occupying a covered auto. *See* Minn.Stat. § 65B.43, subd. 5 (2002) (providing that "insured" includes the named insured and the named insured's family members, while residing in the same household). Therefore, there

41

·is no conflict between the policy and the no-fault statute, and the definition of insured in Liberty Mutual's policy is not required to be coextensive for liability and UM/UIM coverage.

## II.

The next inquiry is whether the Turners are insureds under the Liberty Mutual policy by virtue of the fact that they were occupying a covered vehicle at the time of the accident. The UM/UIM endorsement in Liberty Mutual's policy provided coverage for persons occupying a "covered auto." For purposes of UM/UIM coverage, the policy defined a covered auto as

> [o]nly those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage.

Under the policy terms, Express Scripts had only one commercial vehicle—a Dodge Caravan that was subject to a long-term lease and that was used and garaged in Minnesota.

■ The district court's conclusion that the Turners were occupying a covered vehicle was based not on the policy language but on an extension of coverage through its interpretation of Minn.Stat. § 60A.08, subd. 12 (2002). Minn.Stat. § 60A.08, subd. 12, provides that "[a]ll commercial automobile liability policies must provide coverage for rented vehicles as required in chapter 65B." Because the phrase "commercial automobile liability policy" is not defined in Minn.Stat. ch. 65B (2002), the district court reasoned that the language, when given its plain, ordinary meaning, should apply to business auto policies. To do otherwise could leave an employee, who was injured in a rental car on a business trip but who had no personal auto coverage, without any UM/UIM coverage.

In a case of first impression concerning the interpretation of Minn.Stat. § 60A.08, subd. 12, Liberty Mutual argues that the sole purpose of the statute is to obligate all commercial auto insurers to pay for property damage to rental vehicles up to $35,000 when vehicles are rented in connection with the insured's business. Looking at the interplay between Minn.Stat. § 60A.08 and Minn.Stat. ch. 65B, we are persuaded by Liberty Mutual's position.

We conclude that Minn.Stat. § 60A.08, subd. 12, requires commercial policies to provide only the coverage that chapter 65B expressly requires for rented vehicles. In regard to rental vehicles, chapter 65B requires that every policy

> insuring a natural person as named insured, covering private passenger vehicles * * * must provide that all of the obligation for damage and loss of use to a rented private passenger vehicle, * * * would be covered by the property damage liability portion of the plan.

Minn.Stat. § 65B.49, subd. 5a(a). Therefore, we conclude that chapter 65B requires that personal policies covering passenger vehicles must provide damage and loss-of-use protection for rented private passenger vehicles. Pursuant to Minn. Stat. § 60A.08, subd. 12, commercial policies must do the same.

Minn.Stat. § 65B.49, subd. 5a, also provides that

> [i]f the person renting the motor vehicle is also covered by the person's employer's insurance policy or the employer's automobile self-insurance plan, the reparation obligor under the employer's policy or self-insurance plan has primary responsibility to pay claims arising from use of the rented vehicle.

*Id.*, subd. 5a(d). Therefore, if, but only if, an employer's policy provides coverage for claims arising from the use of rental vehicles, that coverage is primary.

■ The no-fault act does not require commercial or personal automobile policies to provide UM/UIM coverage for rental

vehicles.[1] We conclude that Liberty Mutual's policy does not provide UM/UIM coverage to the Turners as occupants of the rental car. Because the Turners do not have UM/UIM coverage under Liberty Mutual's policy, we do not address whether the policy provides coverage up to the amount specified in the UM/UIM endorsement.

## DECISION

Because we conclude that the Turners are not insureds for purposes of uninsured/underinsured motorist coverage under Liberty Mutual's policy, we reverse.

**Reversed.**

---

1. Fortunately, the Turners are not without UM/UIM coverage. It is undisputed that they have access to coverage under their personal auto policy with MSI.