Judd TURNER, et al., Appellants,

v.

MUTUAL SERVICE CASUALTY
INSURANCE COMPANY,
Appellant,

Liberty Mutual Fire Insurance
Company, Respondent.

No. C9–02–2029.

Supreme Court of Minnesota.

March 4, 2004.

Donald R. McNeil, Jr., Stephen F. Buterin, Coleman, Hull & Van Vliet, P.L.L.P, Fredrick C. Brown, Jr., Smith Parker, P.L.L.P., Minneapolis, for Appellants Turners.

Jack D. Moore, Moore, Warner & Kruger, St. Paul, for Appellant Mut. Service Ins. Co.

Nancy L. Gores, Conley & Borgeson, St. Paul, Theodore J. Smetak, Douglas D. McGhee, Arthur, Chapman, Kettering,

Smetak & Pikala, P.A, Minneapolis, for Respondent.

Paul D. Peterson, Harper & Peterson, P.L.L.C., Woodbury, for Amicus MTLA.

## OPINION

GILBERT, Justice.

This is a case of first impression involving a question of whether the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2002), requires commercial automobile policies to provide uninsured or underinsured motorist coverage ("UM/UIM") to occupants of an out-of-state rental vehicle. The court of appeals held that Minn.Stat. § 60A.08, subd. 12 (2002) requires commercial policies to provide only for damage and loss of use to rental vehicles pursuant to Minn.Stat. § 65B.49, subd. 5a (2002). *Turner v. Mutual Serv. Cas. Ins. Co.*, 663 N.W.2d 36, 41 (Minn.App.2003). We affirm.

In November 1999, Judd and Terese Turner traveled to New Orleans to attend a conference on behalf of Judd Turner's employer, Express Scripts. Express Scripts' corporate travel agency arranged the trip itinerary, air travel, hotel and a car rental from Budget Rent–A–Car. The company travel policy directed the Turners to decline additional insurance from Budget Rent–A–Car. Costs associated with the Turners' travel, including the car rental, were charged through a corporate credit card and later paid by Express Scripts.

On November 7, 1999, while driving towards Baton Rouge, the Turners were involved in a serious car accident with another car that was in the wrong lane. The head-on collision killed the driver and a passenger in the other car and injured the Turners. State Farm Insurance insured the other car, with policy limits of $25,000 per person and $50,000 per accident. State Farm Insurance settled the death claim of the estate of the other driver's passenger for $25,000, and the bodily injury claims of the Turners for all remaining liability coverage of $25,000. Costs associated with the Turners' injuries exceeded the State Farm Insurance payment. Mutual Service Casualty Insurance Company (MSI) insured the Turners with personal coverage and provided UM/UIM coverage with a limit of $250,000 per person and $500,000 per accident. Respondent Liberty Mutual Fire Insurance Company provided commercial coverage to Express Scripts that carried $1,000,000 in UM/UIM coverage.

Respondent's commercial policy provided coverage for an "insured," that was defined as anyone who uses, with the policyholders permission, "a covered 'auto' you own, hire or borrow * * *." UM/UIM coverage was restricted to persons occupying a "covered auto," that was defined as "[o]nly those 'autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage." Under the policy terms, Express Scripts had only one commercial vehicle, a Dodge Caravan, that was subject to a long-term lease and that vehicle was used and garaged in Minnesota.

A declaratory judgment action was filed by the Turners to resolve a dispute regarding the UM/UIM coverage. Respondent denied that it should have provided UM/UIM coverage for this accident. MSI denied that it had primary UM/UIM coverage. The district court found that respondent's commercial insurance policy was required to provide UM/UIM coverage per Minn.Stat. § 60A.08, subd. 12.

The district court then applied the $1,000,000 UM/UIM coverage that had been designated to Express Scripts' company vehicle. It designated respondent's coverage as primary, and the Turners' personal coverage as secondary.

The court of appeals reversed, holding that Minn.Stat. § 60A.08, subd. 12 requires commercial policies to provide only for damage and loss of use to rental vehicles pursuant to Minn.Stat. § 65B.49, subd. 5a. *Turner*, 663 N.W.2d at 41. The court noted that the Turners have access to UM/UIM coverage under their personal insurance policy. *Id.* at 42 n. 1. We granted review on the statutory question.

## I.

■ The interpretation of a statute is a question of law that we review de novo. *Hertz Corp. v. State Farm Mut. Ins. Co.*, 573 N.W.2d 686, 688 (Minn.1998). The Minnesota No–Fault Automobile Insurance Act requires every motor vehicle owner to maintain a certain amount of UM/UIM coverage. Minn.Stat. § 65B.49, subd. 3a(2) (2002). The purpose of UM/UIM coverage is to protect named insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile. *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983). In 1985, the legislature adopted several amendments to the No–Fault Act, including a new section governing UM/UIM coverage. Act of June 27, 1985, ch. 10, § 68, 1985 Minn. Laws, 1st Spec. Sess. 1781, 1840–41 (codified at Minn.Stat. § 65B.49, subd. 3(a)). One of the updated provisions provides:

> The uninsured and underinsured motorist coverages required by this subsection do not apply to bodily injury of the insured while occupying a motor vehicle owned by the insured, unless the occupied vehicle is an insured motor vehicle.

Minn.Stat. § 65B.49, subd. 3a(7) (2002). We have interpreted that provision as moving UM/UIM coverage away from coverage that follows the individual policyholder and instead ties it to the particular vehicle specified in the insurance policy. *Hanson v. Am. Family Mut. Ins. Co.*, 417 N.W.2d 94, 96 (Minn.1987). Before the 1985 amendment, we considered UM/UIM insurance to be coverage tied to the individual. *Id.* at 95. We noted that the legislature passed this amendment "to stem rising insurance costs, which it traced in part to prior law requiring expansive interpretation of vehicle insurance coverage." *Id.* (citing Hearing on H.F. 345, before the Sen. Com. Econ. Dev. and Comm., 74th Minn. Leg., April 16, 1985 (comments of Senator Petty, senate sponsor of the 1985 amendments)).

The current statute requiring UM/UIM coverage is Minn.Stat. § 65B.49, subd. 3a(2), which provides that "[e]very owner of a motor vehicle registered or principally garaged in this state shall maintain uninsured and underinsured motorist coverages as provided in this subdivision." The minimum UM/UIM coverage is detailed in Minn.Stat. § 65B.49, subd. 3a(1) (2002), providing that "[e]ach coverage, at a minimum, must provide limits of $25,000 because of injury to or the death of one person in any accident and $50,000 because of injury to or the death of two or more persons in any accident." Individuals may select and purchase the amount of UM/UIM coverage they desire on their own automobile insurance policy up to the bodily injury liability limits of that policy, as long as the coverage at least meets the statutory minimum. *See* Minn.Stat. § 65B.49, subd. 3a(3) (2002).

■ Minnesota also requires commercial insurance policies to contain a certain amount of insurance coverage for rental vehicles. Minn.Stat. § 60A.08, subd. 12,

provides that "[a]ll commercial automobile liability policies must provide coverage for rented vehicles as required in chapter 65B. This coverage can be excess over any and all specific motor vehicle coverage that is applicable." The phrase "as required in chapter 65B" is not further clarified, and constitutes the crux of the current dispute. Appellants argue, and the district court agreed, that all the requirements of chapter 65B should apply to rental cars per Minn.Stat. § 60A.08, subd. 12. Respondent argues, and the court of appeals agreed, that only Minn.Stat. § 65B.49, subd. 5a, a subdivision concerning "rental vehicles," should apply to Minn.Stat. § 60A.08, subd. 12.

Chapter 65B of the Minnesota Statutes details an extensive list of requirements for automobile insurance, including UM/UIM coverage. One subdivision of chapter 65B specifically concerns rental cars. *See* Minn.Stat. § 65B.49, subd. 5a. The rental car provision does not contain a reference to UM/UIM coverage. *See id.* According to the pertinent section of Minn. Stat. § 65B.49, subd. 5a:

> (a) Every plan of reparation security insuring a natural person as named insured * * * must provide that all of the obligation for damage and loss of use to a rented private passenger vehicle, including pickup trucks and vans as defined under section 168.011, and rented trucks with a registered gross vehicle weight of 26,000 pounds or less would be covered by the *property damage liability portion of the plan.* * * * The obligation of the plan must not be contingent on fault or negligence. In all cases where the plans property damage liability coverage is less than $35,000, the coverage available under the subdivision must be $35,000.

Minn.Stat. § 65B.49, subd. 5a(a) (emphasis added). Another subdivision within chapter 65B requires UM/UIM coverage, but makes no mention of rental vehicles. *See* Minn.Stat. § 65B.49, subd. 3a (2002).

Respondent argues that only subdivision 5a of chapter 65B.49, the rental vehicle subdivision, should apply where Minn.Stat. § 60A.08, subd. 12 requires coverage for "rented vehicles as required in chapter 65B," because that subdivision is the only section of the chapter that specifically refers to rental cars. Appellants argue that all of chapter 65B should apply to rental cars per Minn.Stat. § 60A.08, subd. 12, because had the legislature intended to limit coverage to a single subdivision concerning "rental vehicles," it would have specified the requirement as such, instead of broadly pointing to "chapter 65B."

Appellants further argue that public policy dictates a UM/UIM requirement for rental cars. According to appellants, the court of appeals' interpretation of the act would cause a "gap" to occur in no-fault insurance coverage for those business travelers who do not have personal coverage, leaving those travelers without coverage, a result presumably contrary to the purpose of the act.

According to rules of statutory interpretation, when the words of a law in their application to an existing situation are clear, the letter of the law shall not be disregarded under the pretext of pursuing the spirit. Minn.Stat. § 645.16 (2002). A plain reading of the statute supports the interpretation utilized by the court of appeals. Where Minn.Stat. § 60A.08, subd. 12, points to "rented vehicles as required in chapter 65B," it makes logical sense,. as the court of appeals held, to strictly associate the subdivision regarding "rental vehicles" with the statutory requirement concerning "coverage for rented vehicles." This rationale would be different if, for example, the subdivision regarding UM/ UIM coverage was more expansive.

We have recognized that the legislature, in 1985, narrowed the UM/UIM statute "to stem rising insurance costs, which it traced in part to prior law requiring expansive interpretation of vehicle insurance coverage." *Hanson*, 417 N.W.2d at 96. The district court's interpretation, that the "rental vehicle" subdivision was simply one of many requirements for commercially rented vehicles within chapter 65B, appears to be overly broad and contrary to the legislatures attempt to stem rising insurance coverage. This interpretation would require Minnesota corporations to provide UM/UIM coverage to employees regardless of whether the employee is occupying a covered auto, has residency, or any other personal association with Minnesota. Such a result contradicts the legislature's intention in 1985, when the UM/UIM subdivision was narrowed. As we have noted, following the 1985 amendments, UM/UIM coverage moved away from coverage that follows an individual policyholder, and now is tied to the particular vehicle involved in the accident. *Hanson*, 417 N.W.2d at 96. The UM/UIM endorsement in respondent's policy provided coverage for persons occupying a "covered auto," in this case, a Dodge Caravan.

After limiting the "rented vehicle" requirement to the "rental vehicle" subdivision, a plain reading of that subdivision supports the court of appeals' conclusion that Minn.Stat. § 65B.49, subd. 5a(a) (dealing with rental vehicles) was clearly meant to protect only the vehicle from damage where it states that every plan "insuring a natural person as named insured, covering private passenger vehicles * * * must provide that all of the obligation for damage and loss of use to a rented private passenger vehicle, * * * would be covered by the property damage liability portion of the plan." *Turner*, 663 N.W.2d at 41 (quoting Minn.Stat. § 65B.49, subd. 5a(a)). A close reading of the subdivision supports the court of appeals' interpretation, as the statute specifically points to "damage and loss of use to a rented private passenger vehicle," and does not indicate additional, broader coverage. Minn.Stat. 60A.08, subd. 12, would not, as appellants assert, create UM/UIM commercial policy coverage of rental vehicles unless the commercial policy itself provides such coverage.

Affirmed.